Nancy TRAUT, Appellant,

v.

William R. BEATY, M.D., Appellee.

No. 06–01–00007–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 12, 2002.

Decided April 26, 2002.

M. Mark Lesher, Monty G. Murry, Lesher & Murry, Texarkana, for appellant.

Ken W. Good, Christie L. Ryan, Buchanan Kent, PC, Tyler, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Nancy Traut appeals from a summary judgment granted in favor of William Beaty, M.D. Traut sued Beaty,[1] alleging negligence and negligence based on *res ipsa loquitur* when part of a wire, about one centimeter long, was left in Traut's left breast after Beaty performed a hook-wire needle localization procedure on her.[2] Sometime later, Beaty filed a motion for sanctions under TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp.2002), contending that Traut failed to file the expert report required by the statute. The trial court ordered Traut's cause of action for negligence dismissed with prejudice and ordered Traut to produce an expert report within 120 days.

After the period specified in the trial court's order expired, Beaty filed a motion for summary judgment, a supplemental motion for summary judgment, and a new motion for sanctions. In his summary

---

1. Traut also sued Dr. Robert Mack, but later dismissed him as a defendant in the case.

2. At oral argument, Traut contended her cause of action was based on Beaty's action in breaking off the wire in her breast. However, in her petition, Traut alleged, "Defendant [has] violated the common law doctrine of *res ipsa loquitur* by leaving the needle or piece of a needle in plaintiff's left breast and [is] thereby guilty of negligence per se."

judgment motions, Beaty contended *res ipsa loquitur* was inapplicable as a matter of law. He also contended there was no evidence that his negligence caused Traut's injury. In his motion for sanctions, Beaty contended Traut failed to provide the expert report the trial court had previously ordered.

The trial court ordered Traut's cause of action for negligence based on *res ipsa loquitur* dismissed with prejudice and granted Beaty's motions for summary judgment. On appeal, Traut contends the trial court erred in granting Beaty's second motion for sanctions and his motions for summary judgment.[3]

The Medical Liability and Insurance Improvement Act, TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d)(1), requires a plaintiff, within 180 days of filing a claim, either to furnish one or more expert reports to counsel for each physician or health care provider against whom the plaintiff asserts the claim or to nonsuit the case. An expert report is not required for any issue other than an issue related to liability or causation. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(j).

If the plaintiff fails to provide an expert report or to nonsuit the case within the time required, the trial court must, on the defendant's motion, award as sanctions (1) the defendant's reasonable attorney's fees and court costs; (2) the forfeiture of the plaintiff's cost bond to the extent necessary to pay the award; and (3) the dismissal of the plaintiff's action with prejudice. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e). The trial court may grant one thirty-day extension of the deadline for filing the expert report on a showing of good cause after motion and a hearing. TEX.REV.CIV. STAT. ANN. art. 4590i,

§ 13.01(f). We apply an abuse of discretion standard when reviewing a dismissal under Article 4590i, § 13.01, reversing only if the trial court acts unreasonably or arbitrarily. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001).

As a general rule, a plaintiff has no cause of action against a doctor for malpractice, either in diagnosis or treatment, unless he proves by a doctor of the same school of practice as the defendant that the diagnosis or treatment complained of was negligence and that such negligence was a proximate cause of the plaintiff's injuries. *Williams v. Bennett*, 610 S.W.2d 144, 146 (Tex.1980). Ordinarily, expert testimony is required to establish the governing standard of care, and to determine whether the standard has been breached. *Ocomen v. Rubio*, 24 S.W.3d 461, 466 (Tex. App.-Houston [1st Dist.] 2000, no pet.); *McCombs v. Children's Med. Ctr. of Dallas*, 1 S.W.3d 256, 259 (Tex.App.-Texarkana 1999, pet. denied).

*Res ipsa loquitur*, meaning "the thing speaks for itself," is an evidentiary rule applied when the circumstances surrounding an accident are sufficient to support an inference of negligence. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990). *Res ipsa loquitur* applies when (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant.

For health care liability claims, *res ipsa loquitur* applies only in those cases to which it has been applied as of the effective date of the Medical Liability and Insurance Improvement Act, i.e., August

---

**3.** Traut does not contest the trial court's first sanctions order, which dismissed her negligence claim that was not based on *res ipsa loquitur*.

29, 1977. TEX.REV.CIV. STAT. ANN. art. 4590i, § 7.01 (Vernon Supp.2002); *see also Haddock v. Arnspiger*, 793 S.W.2d at 950. At the time the Act was enacted, Texas courts generally recognized *res ipsa loquitur* was inapplicable in medical malpractice cases, except when the nature of the alleged malpractice and injuries are plainly within the common knowledge of lay people, such as negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges in the body. *Haddock v. Arnspiger*, 793 S.W.2d at 951. Further, a plaintiff may not automatically rely on *res ipsa loquitur* in every medical malpractice case involving the use of a mechanical instrument, but only in those cases where the use of the mechanical instrument is within the common knowledge of lay people. *Id.* In *Haddock*, for example, the Texas Supreme Court held that the use of a flexible colonoscope to perform a proctological examination was not within the common knowledge of lay people. *Id.* at 954.

■ Beaty contends this is not a proper case for the application of *res ipsa loquitur*. The trial court granted Beaty's motion for summary judgment. The judgment was based on Beaty's contention that *res ipsa loquitur* did not apply. However, reviewing the summary judgment proof, we conclude that the trial court erred because Beaty's deposition testimony is sufficient to create a fact question on whether he conceded he breached the standard of care, notwithstanding whether *res ipsa loquitur* applies. In his deposition, Beaty testified:

Q. And then somehow that piece of wire broke off while you were taking the wire out?

A. Correct.

Q. And ordinarily you would take all the wire out?

A. Correct.

Q. And the appropriate care would be to take the whole wire out; would you agree with that?

A. Right. I agree.

Q. And that would be prudent to take the whole wire out, correct?

A. Right.

Q. And it would not be prudent to leave a piece of wire in that lady's body?

A. Well, you don't want to leave the wire in; you would want to take it out. There's no need to leave it in there.

Q. Right. It would be prudent to take all the wire out?

A. Right.

Q. It would not be prudent to leave some piece in there?

A. Right.

Q. Do you agree with that statement?

A. Just for the—that, yes.

. . . .

Q. Did you tell the patient that [the wire broke off in her breast]?

A. No, I didn't.

Q. Why not?

A. At the time we—this lady had—well, I don't actually remember exactly why not, but I can tell you what the motives I would have not to tell her.

Q. Go ahead.

A. . . . [T]he fact that it's [the wire] in there, all the evidence I know about and in my experience I've never seen it cause any trouble to a breast. I've seen multiple wires left in people's breast [sic] and nobody has had any trouble as far as I know. There is no medical complication from it. . . . In addition to that, if we had taken it out, she'd have to go and have it opened up by the surgeon. This would increase the risk of a scar in her breast, and this would make

it harder to interpret her mammogram. I knew I was going to ask to have a month or two to make sure that nodule was gone. So, it would just make it harder to determine that, so it would be better not to take it out ... I wanted it to stay in there. If I had told her, I would still insist that she left [sic] it alone and it would still been [sic] there.

In short, Beaty testified that the appropriate care is to take the wire out and that it is not prudent to leave a part of the wire in the patient. However, he also testified that leaving the wire in would cause no medical complications, that taking it out would require surgery and risk scarring, and that he would have advised Traut to leave it in. Beaty's conflicting testimony creates a fact question on the issue of the standard of care and the breach of that standard irrespective of whether *res ipsa loquitur* applies. Therefore, Beaty failed to show himself entitled to judgment as a matter of law.

The remaining question is whether the trial court correctly dismissed Traut's cause of action for her failure to provide an expert report. Traut contends a plaintiff need not provide an expert report when the cause of action alleges negligence based on *res ipsa loquitur*. Beaty contends *res ipsa loquitur* does not apply.[4]

We are aware of only two Texas cases in which a plaintiff made a similar contention to the one Traut makes here. *See Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d 727, 734 (Tex.App.-San Antonio 1999, no pet.); *Odak v. Arlington Mem'l Hosp. Found.*, 934 S.W.2d 868, 869 (Tex.App.-Fort Worth 1996, writ denied). In *Schorp*, the court of appeals held the circumstances surrounding the insertion of an arterial line into the plaintiff's radial artery and the subsequent complications that developed were matters outside the common knowledge of jurors. *Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d at 735–36. In *Odak*, the court of appeals held that the use of an intravenous needle to give an infant an injection that caused the child's foot and leg to swell, blister, and burn was not within the common knowledge of lay people. *Odak v. Arlington Mem'l Hosp. Found.*, 934 S.W.2d at 873. In both cases, therefore, *res ipsa loquitur* did not apply and expert testimony was needed. *Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d at 736; *Odak v. Arlington Mem'l Hosp. Found.*, 934 S.W.2d at 873.

Beaty cites *Arguello v. Gutzman*, 838 S.W.2d 583, 585 (Tex.App.-San Antonio 1992, no writ), in which the plaintiff alleged he was injured when one of the jaws of a meniscus grabber his doctor was using to repair his knee broke off in his knee. The plaintiff contended summary judgment was inappropriate because *res ipsa loquitur* applied to raise a fact issue on breach of duty and proximate causation. *Id.* at 587. The court of appeals held that the use of a meniscus grabber was not a matter plainly within the common knowledge of lay people, making *res ipsa loquitur* inapplicable. *Id.*

Traut relies on *Steinkamp v. Caremark*, 3 S.W.3d 191, 193 (Tex.App.-El Paso 1999, pet. denied), in which the defendant insert-

---

4. At oral argument, Beaty contended Tex.Rev. Civ. Stat. Ann. art. 4590i, § 13.01 (Vernon Supp.2002) requires an expert report even when the plaintiff alleges negligence based on *res ipsa loquitur*. This contention is somewhat broader than the one he made in his brief, in which he contends an expert report is needed to establish causation when the plaintiff alleges negligence based on *res ipsa loquitur*. *See Appellant's Brief* at 6–7 ("The application of ... *res ipsa loquitur* ... does not eliminate the need for evidence of causation."). Because we agree with the contention Beaty makes in his brief, we need not address the broader contention he made at oral argument.

ed a catheter in the plaintiff's arm, but the catheter disintegrated, requiring the plaintiff to undergo surgery without anesthesia to remove the catheter. The trial court struck the deposition testimony of the plaintiff's expert witness and granted the defendant's no-evidence motion for summary judgment. *Id.* at 195.

The court of appeals held summary judgment was inappropriate because, under a theory of *res ipsa loquitur,* no expert testimony was required to establish the standard of care or the breach of that standard. *Id.* at 195, 197. In so holding, the court of appeals distinguished *Haddock* and *Arguello* as cases involving the use of medical instruments as opposed to leaving a medical instrument inside the body. *Id.* at 196.

The present case is different from both *Steinkamp* and *Arguello.* In both those cases, the instruments broke inside the patients' bodies and the defendants took immediate action to remove the broken pieces. In the present case, the instrument broke inside the patient's body and the doctor left it in without seeking its removal.

■ Nevertheless, *res ipsa loquitur* cannot be applied in every case in which an object is left in a patient's body. *See Westerlund v. Naaman,* 833 S.W.2d 725, 728 (Tex.App.-Houston [1st Dist.] 1992, no writ) (*res ipsa loquitur* did not apply where thirty-centimeter-long thread found in patient's body after surgery); *Rogers v. Duke,* 766 S.W.2d 547, 548 (Tex.App.-Houston [1st Dist.] 1989, no writ) (*res ipsa loquitur* did not apply where sponge left in patient's body because summary judgment proof showed doctor not in control of sponge at the time it was left in patient). Such a conclusion follows logically from the rule that *res ipsa loquitur* is inapplicable in medical malpractice cases, except when the nature of the alleged malpractice

and injuries are plainly within the common knowledge of lay people. To conclude *res ipsa loquitur* applies any time an object is left inside a patient would make the exception the rule.

■ In *Steinkamp,* the court characterized the negligent act as "leaving one piece of catheter inside Steinkamp's vein to travel dangerously toward her heart." *Steinkamp v. Caremark,* 3 S.W.3d at 197. The present case does not involve the same type of risk to the patient; therefore, the inference of negligence is far less tenable. In fact, Beaty's deposition testimony, quoted above, demonstrates that the risk to Traut's overall care from removing the wire may have justified the decision to leave the wire in. Determining such a question is not plainly within the common knowledge of lay people. Therefore, *res ipsa loquitur* does not apply, expert testimony was required, and Traut needed to provide an expert report.

Further, *Steinkamp* provides authority for Beaty's contention that an expert report is needed to prove causation even where *res ipsa loquitur* applies. In *Steinkamp,* the defendant contended there was no evidence the defendant's breach of her duty caused the plaintiff's injury. *Steinkamp v. Caremark,* 3 S.W.3d at 199. The court of appeals held the plaintiff's summary judgment proof did not raise a fact question on the issue of causation. Specifically, the court held causation in a medical negligence case must be proved by expert testimony.

In *Kalteyer v. Sneed,* 837 S.W.2d 848, 853 (Tex.App.-Austin 1992, no writ), the plaintiff alleged *res ipsa loquitur* applied to establish her doctor's negligence in giving her an injection of a substance to which she had previously suffered an adverse reaction, and in improperly shielding her during an X-ray. The court of appeals

assumed *res ipsa loquitur* applied, but held summary judgment for the doctor was appropriate because the plaintiff failed to produce expert testimony raising a fact question on the issue of causation. *Id.* at 853–54.

■ Not every medical malpractice case requires expert testimony to demonstrate causation. A trier of fact may decide the issue of causation in medical malpractice cases when (1) general experience and common sense will enable a lay person fairly to determine the causal connection, (2) expert testimony establishes a traceable chain of causation from the injuries back to the event, or (3) a probable causal connection is shown by expert testimony. *Parker v. Employers Mut. Liab. Ins. Co. of Wis.*, 440 S.W.2d 43, 46 (Tex.1969); *Cruz v. Paso Del Norte Health Found.*, 44 S.W.3d 622, 630 (Tex.App.-El Paso 2001, pet. denied); *Bradley v. Rogers*, 879 S.W.2d 947, 954 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *see also Rehabilitative Care Sys. of Am. v. Davis*, 43 S.W.3d 649, 660 (Tex.App.-Texarkana 2001, pet. denied).

For instance, in *Manax v. Ballew*, 797 S.W.2d 71, 72 (Tex.App.-Waco 1990, writ denied), a jury found a physician negligent for operating on the wrong portion of the plaintiff's back to remove a lipoma. The court of appeals held the trial court did not err in giving a jury instruction on *res ipsa loquitur* because any lay person could look at the plaintiff's back and determine the surgery was performed in a different area than the doctor agreed to perform it. *Id.* at 73. Significantly, though acknowledging the rule that the plaintiff must still present evidence of a causal connection between the doctor's negligence and the plaintiff's injury, the court held that the fact of the resulting injury was indisputable in that case.

The present case does not present a situation in which general experience and common sense would enable a lay person to determine the causal connection between Beaty's negligence and Traut's injury, if any. In her deposition, which she included in her summary judgment proof, Traut testified the piece of wire was causing her mild discomfort, specifically when she wore "a certain type of bra" or when she lay on her stomach. She also testified two other doctors told her the wire would not cause her any problems.

In contrast, Beaty testified in his deposition that a piece of wire left in a patient's breast would not cause the patient pain, even if it moves around. He also testified any pain or discomfort Traut is experiencing could have resulted from some other complication arising from the procedure.

All of this testimony demonstrates the need for expert testimony to establish the causal connection between Beaty's negligence and Traut's pain and discomfort. In *Manax*, the jury could readily evaluate the causal connection between the defendant's failure to operate on the correct portion of the plaintiff's back and the plaintiff's injury. *Manax v. Ballew*, 797 S.W.2d at 73. In this case, a jury could not rule out other causes of Traut's discomfort without the aid of expert testimony.

We find the trial court did not abuse its discretion in dismissing the suit because of Traut's failure to provide the expert report required by TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01. We need not address whether summary judgment was appropriate on Beaty's contention that Traut presented no evidence establishing causation.

The judgment is affirmed.

GRANT, J., concurs in the result only.