NO. 07-02-0497-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 6, 2003



______________________________




CHAD GALE SNIDER, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B13816-0009; HONORABLE ED SELF, JUDGE



_______________________________




Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.


MEMORANDUM OPINION



 Following abatement of this appeal and remand of the cause, the trial court held a
hearing to determine whether appellant wished to prosecute his appeal. During the
hearing, appellant indicated he wished to have his appeal dismissed. Pursuant to the trial
court's instructions, appellant's counsel prepared a waiver of appellant's right to appeal,
which the trial court found appellant executed freely and voluntarily. No decision of this
Court having been delivered, we dismiss this appeal. No motion for rehearing will be
entertained and our mandate will issue forthwith. (1)

 Accordingly, the appeal is dismissed.



 Phil Johnson

 Chief Justice

 





Do not publish.




1. Rule 42.2(a) of the Texas Rules of Appellate Procedure requires a written
withdrawal of a notice of appeal to be filed in duplicate in this Court. Appellant's written
waiver of his right to appeal was filed with the Hale County District Clerk. However,
appellant's intention being clear, we apply Rule 2 to suspend the operation of Rule 42.2(a).


AN STYLE="font-size: 10pt">See In re Entergy Corp., 142
S.W.3d 316, 320 (Tex. 2004) (holding that before mandamus can issue, the applicant must
show that the trial court clearly abused its discretion); Walker v. Gutierrez, 111 S.W.3d 56,
63 (Tex. 2003) (holding that the appropriate standard of review when assessing whether
the trial court erred in granting an extension is one of abused discretion). According to
Covenant, such an abuse occurred because the failure to timely provide an adequate report
resulted not from an accident or mistake, as contemplated by art. 4590i, §13.01(g), but
rather intentional or consciously indifferent conduct. (2) Moreover, the conduct consisted of
a purported mistake of law concerning the qualifications or ability of a registered nurse to
opine about what caused the injury at issue. 

 The expert in question (Paula L. Antognoli, Ph.D., R.N., C.N.A.A.) was, and is, a
registered nurse with a doctorate in philosophy. In her report, she generally described the
length of time she practiced nursing, her duties, and the areas of her "clinical expertise." 
The latter included "medical/surgical, critical care, emergency and trauma care, and
surgical services . . . ." So too did she state that the "enclosed vita attests to my
qualifications as a result of my education and experience to render an opinion about the
standard of care applicable to this case." (Emphasis added). Nowhere in the report or
vitae, however, did she expressly represent that her qualifications also enabled her to
address causation.

 One suing another for medical malpractice must

 [n]ot later than the later of the 180th day after the date on which a health care
liability claim is filed or the last day of any extended period . . . (1) furnish to
counsel for each physician . . . one or more expert reports, with a curriculum
vitae of each expert listed in the report; or (2) voluntarily nonsuit the action
against the physician . . . .


Tex. Rev. Civ. Stat. Ann. art. 4590i, §13.01(d) (Vernon Supp. 2003). For a report to satisfy
art. 4590i, §13.01(d), it must be written by an expert and provide a fair summary of that
expert's opinions regarding the applicable standard of care, its breach, and the causal
relationship between the breach and injury. Chisholm v. Maron, 63 S.W.3d 903, 906 (Tex.
App.-Amarillo 2001, no pet.). So too must it and the attached vitae establish the expert's
qualifications as an expert. Id. That is, it must show that the declarant is qualified as an
expert on the subject about which he speaks. Id. at 906-07; accord In re Windisch, 138
S.W.3d 507, 511 (Tex. App.-Amarillo 2004, orig. proceeding). 

 Next, while expert testimony is normally required to establish the elements of a
medical malpractice claim, see Hood v. Phillips, 554 S.W.2d 160, 165-66 (Tex. 1977), that
rule has its exceptions. For instance, under some circumstances it may not be necessary
to prove causation. Schneider v. Haws, 118 S.W.3d 886, 892-93 (Tex. App.-Amarillo
2003, no pet.); Traut v. Beaty, 75 S.W.3d 661, 668 (Tex. App.-Texarkana 2002, no pet.). 
Those circumstances include situations wherein the relationship between the act and result
is a topic that can be accessed simply through the exercise of a factfinder's general
experience and common sense. Id. 

 At bar, Cord sued Covenant and a licensed vocational nurse (LVN). His complaints
were founded upon alleged breaches of standards applicable to the nursing profession. 
Being that the standards of care at issue pertained to nursing, as opposed to the practice
of medicine by a physician, Cord had a registered nurse (Antognoli) review the supposed
misfeasance and draft a report per §13.01(d), art. 4590i. In her report, Antognoli not only
described the acts she deemed misfeasance but also opined about the applicable
standards of care which a nurse was to follow, their breach, and the causal relationship
between their breach and injury suffered by Cord. Furthermore, in explaining her
qualifications as an expert, she said nothing about her ability to discuss the topic of
causation. Instead, she simply represented that her education and experience enabled her
"to render an opinion about the standard of care . . . ." Thereafter, the trial court found the
report deficient; it apparently believed that she either was not qualified as an expert to
opine about causation or did not illustrate that she was so qualified. Nonetheless, it
eventually gave Cord 30 more days to file a report satisfying the requirements of §13.01(d).

 Implicit in the decision to extend Cord more time is the finding that neither he nor his
attorney acted intentionally or with conscious indifference when tendering the initial report. (3) 
Indeed, one of Cord's attorney's testified that they did not so act but thought a nurse such
as Antognoli was qualified to opine about the results of one's failure to abide by standards
of care recognized in the field of nursing. And, while admitting that Antognoli may not have
been qualified to discuss the "extent of the brain damage" suffered by Cord, he nonetheless
thought her capable of analyzing the effect one's inability to breathe would have on one's
well-being. Indeed, he informed the trial court that with regard to the failure to "monitor a
patient, if a patient stops breathing, you probably don't even need to be a nurse to say
that's going to cause harm." 

 Given the statement of Cord's attorney, there is evidence of record upon which the
trial court could have found (when deciding whether to grant additional time) that counsel
likened the element of causation to be of the kind mentioned in Schneider and Traut; that
is, of the type that requires no expert testimony. In other words, the trial court had before
it evidence of a purported mistake made by Cord's attorney which influenced his decision
to have Antognoli draft the report. The alleged mistake consisted of the belief that a
registered nurse could opine not only about the duties imposed on nurses but also the
injuries caused others by the misconduct of nurses. More importantly, that nurses could
so testify in certain situations found support in the law, as illustrated by Schneider and
Traut. (4) Since evidence of such a belief appears of record and the belief has arguable basis
in the law, the trial court had basis to conclude that the mistake of counsel was accidental
as opposed to intentional or consciously indifferent. And, because of that we cannot say
it acted unreasonably or abused its discretion in granting Cord a 30-day extension. Davis
v. Huey, 571 S.W.2d 859, 862 (Tex. 1978) (holding that when findings of fact and
conclusions of law are not filed, the judgment must be upheld on any legal theory supported
in the record). 

 To the extent Covenant suggests that Walker v. Gutierrez mandates a different
result, we would disagree. Walker involved a situation wherein the report omitted one or
more elements required by §13.01(r)(6) of the Revised Civil Statutes. And, because statute
clearly dictated that the report cover each element, the Supreme Court hesitated to excuse
non-compliance with settled law. Walker v. Gutierrez, 111 S.W.3d at 64; see also In re
Zimmerman, 148 S.W.3d 214, 217 (Tex. App.-Texarkana 2004, orig. proceeding). Yet,
unlike the circumstance in Walker, authority here exists that enables a complainant to
utilize a non-expert's opinion on causation in certain cases. So too does the record hold
evidence indicating that Cord and his attorneys thought that authority applied. So, we
cannot say that the mistake, if any, by Cord implicated settled law known to Cord and
contrary to his position.

 Accordingly, the petition for writ of mandamus is denied.



 Brian Quinn

Campbell, J., dissenting. Chief Justice

NO. 07-05-0033-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JULY 7, 2005


______________________________



IN RE COVENANT MEDICAL CENTER


AND JOHN EATON, L.V.N., RELATORS


_________________________________



FROM THE 99
TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 03-522-597; HON. MACKEY K. HANCOCK, PRESIDING


_______________________________






Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

DISSENTING OPINION


 In my judgment, Cord's mistaken belief that Dr. Antognoli's report complied with
section 13.01(r)(6) is not a mistake of law that entitled him to a section 13.01(g) grace
period, and the trial court abused its discretion in granting the grace period. 

 The principle discussed in the Schneider, 118 S.W.3d 886, and Traut, 75 S.W.3d
661, cases, that expert testimony is not required to establish the causal relationship
between a breach of the standard of care and the injuries claimed when that relationship
fairly may be evaluated by the factfinder's general experience and common sense, does
not seem to me to apply to this case. According to Antognoli's report, this case is not
simply about a failure to monitor a patient who stopped breathing. (5) The report provides
three pages of detail, criticizing the nursing care provided Cord in several particulars,
including the incorrect administration of morphine; the failure to accurately and completely
document nursing interventions and physician orders and the patient's response to the
interventions and orders; the failure to record vital signs, pulse oximetry readings and
physical assessments; failures in communication between professional and LVN nursing
staff; and the failure to determine and record the amount of morphine administered to Cord. 
The report then concludes with a statement concerning causation, by which Antognoli
opines that the breaches of the nursing standards "directly contributed to Andrew Cord's
post-surgical complication of respiratory depression and subsequent anoxic
encephalopathy." (6)

 General experience and common sense manifestly would not enable a factfinder to
evaluate fairly the relationship between Cord's neurological damage and the breaches the
report says "directly contributed" to his injuries. 

 Cord's contention that his counsel mistakenly believed Antognoli was qualified to
address causation also cannot support a finding of accident or mistake under Walker
because the asserted mistaken belief does not match the report. Cord's response to
relators' petition cites his counsel's testimony that he believed a nurse is qualified to state
that "harm's done if you don't breathe." (7) But Antognoli's report does not say that Cord
stopped breathing. It does say that, according to medical records and deposition
testimony, he was found with "deep, shallow, noisy slow respirations of 16 per minute." It
also says he was unconscious and unresponsive, and that he was exhibiting seizure
activity. And the report does not just say that he suffered "harm." It says he suffered
anoxic encephalopathy. By its definition in section 13.01(r)(6), an expert report is one that
addresses the standard of care, the manner in which the care rendered failed to meet the
standard, and "the causal relationship between that failure and the injury, harm, or
damages claimed." (emphasis mine). Whether we read Cord's pleadings (which allege
Cord was diagnosed with "hypoxic encepholopathy") or the section 13.01 expert report, the
injury, harm or damages claimed is brain damage. Counsel's stated belief that Antognoli
is qualified to opine "that harm's done if you don't breathe" does not equate to a mistaken
belief that she is qualified to render the opinions contained in her report. 

 In view of the injury claimed and the settled requirements for section 13.01(d)
reports, see Chisholm, 63 S.W.3d at 906; Windisch, 138 S.W.3d at 511, I cannot agree that
a belief no expert testimony on causation was required, or that counsel's stated belief that
Antognoli was qualified, constitutes the kind of mistake of law that entitled Cord to a section
13.01(g) grace period. Walker, 111 S.W.3d at 64. 

 I would hold that the report omitted a required expert opinion on the issue of
causation, see §13.01(r)(6); Chisholm, 63 S.W.3d at 907, and that Cord's mistaken belief
that the report complied with the statute is not a mistake of law that entitled him to a section
13.01(g) grace period. See Walker, 111 S.W.3d at 64-65; In re Brown, No. 07-04-0455-CV,
2005 Tex.App. LEXIS 684, at *6-*7 (Tex.App.-Amarillo January 7, 2005, no pet. h.). 
Accordingly, I would grant relators their requested relief, and respectfully dissent from the
Court's disposition of their petition. 


 James T. Campbell

 Justice



1. The report in question was issued by a registered nurse.
2. Article 4590i, §13.01(g) provided that:


 Notwithstanding any other provision of this section, if a claimant has failed to comply
with a deadline established by Subsection (d) of this section and after hearing the
court finds that the failure of the claimant or claimant's attorney was not intentional
or the result of conscious indifference but was the result of an accident or mistake,
the court shall grant a grace period of 30 days to permit the claimant to comply with
that subsection . . . .


 Tex. Rev. Civ. Stat. Ann. art. 4590i, §13.01(g) (Vernon Supp. 2003).


We recognize that this article can now be found at Tex. Civ. Prac. & Rem. Code Ann. §§74.001-74.507
(Vernon 2005).
3. Again, statute permits the trial court to grant the extension if it concludes that the claimant's actions
were neither intentional nor the result of conscious indifference but rather accidental or a mistake. Tex. Rev.
Civ. Stat. Ann. art.4590i, §13.01(g) (Vernon Supp. 2003).
4. Whether the acts and injury involved in the case at bar evince one of those situations is not a matter
before us at this time. 
5. As discussed below, Antognoli's report does not say Cord stopped breathing. 
6. 
 
 ' ' 
 
7. ' ' 
 " '
 
 
' ' "