NO. 07-05-0033-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 7, 2005
_____

IN RE COVENANT MEDICAL CENTER
AND JOHN EATON, L.V.N.,  RELATORS
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 03-522-597; HON. MACKEY K. HANCOCK, PRESIDING
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.


**DISSENTING OPINION**


In my judgment, Cord's mistaken belief that Dr. Antognoli's report complied with section 13.01(r)(6) is not a mistake of law that entitled him to a section 13.01(g) grace period, and the trial court abused its discretion in granting the grace period.

The principle discussed in the *Schneider*, 118 S.W.3d 886, and *Traut*, 75 S.W.3d 661, cases, that expert testimony is not required to establish the causal relationship between a breach of the standard of care and the injuries claimed when that relationship fairly may be evaluated by the factfinder's general experience and common sense, does not seem to me to apply to this case.  According to Antognoli's report, this case is not

simply about a failure to monitor a patient who stopped breathing.[1]  The report provides three pages of detail, criticizing the nursing care provided Cord in several particulars, including the incorrect administration of morphine; the failure to accurately and completely document nursing interventions and physician orders and the patient's response to the interventions and orders; the failure to record vital signs, pulse oximetry readings and physical assessments; failures in communication between professional and LVN nursing staff; and the failure to determine and record the amount of morphine administered to Cord. The report then concludes with a statement concerning causation, by which Antognoli opines that the breaches of the nursing standards "directly contributed to Andrew Cord's post-surgical complication of respiratory depression and subsequent anoxic encephalopathy."[2]

General experience and common sense manifestly would not enable a factfinder to evaluate fairly the relationship between Cord's neurological damage and the breaches the report says "directly contributed" to his injuries.

Cord's contention that his counsel mistakenly believed Antognoli was qualified to address causation also cannot support a finding of accident or mistake under *Walker* because the asserted mistaken belief does not match the report.  Cord's response to relators' petition cites his counsel's testimony that he believed a nurse is qualified to state

---

[1]As discussed below, Antognoli's report does not say Cord stopped breathing.

[2]Relators contended before the trial court that the expert report was inadequate for the additional reason that its statement concerning causation was a mere conclusion.  *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002).  Relators' mandamus petition here does not make that contention.

that "harm's done if you don't breathe."[3]  But Antognoli's report does not say that Cord stopped breathing.  It does say that, according to medical records and deposition testimony, he was found with "deep, shallow, noisy slow respirations of 16 per minute." It also says he was unconscious and unresponsive, and that he was exhibiting seizure activity.  And the report does not just say that he suffered "harm."  It says he suffered anoxic encephalopathy.  By its definition in section 13.01(r)(6), an expert report is one that addresses the standard of care, the manner in which the care rendered failed to meet the standard, and "the causal relationship between *that* failure and *the injury, harm, or damages claimed*." (emphasis mine). Whether we read Cord's pleadings (which allege Cord was diagnosed with "hypoxic encepholopathy") or the section 13.01 expert report, the injury, harm or damages claimed is brain damage.  Counsel's stated belief that Antognoli is qualified to opine "that harm's done if you don't breathe" does not equate to a mistaken belief that she is qualified to render the opinions contained in her report.

In view of the injury claimed and the settled requirements for section 13.01(d) reports, *see Chisholm*, 63 S.W.3d at 906; *Windisch*, 138 S.W.3d at 511, I cannot agree that a belief no expert testimony on causation was required, or that counsel's stated belief that Antognoli was qualified, constitutes the kind of mistake of law that entitled Cord to a section 13.01(g) grace period.  *Walker*, 111 S.W.3d at 64.

---

[3]The complete statement quoted in Cord's response, from counsel's testimony at the hearing at which the trial court granted the grace period, was:  "In good faith, we didn't need [a brain injury expert]. Obviously, in proof at the trial of the case, we have to show the extent of his injuries. And we are using his treating physicians. But, as far as showing that harm's done if you don't breathe, we certainly felt that a nurse was qualified to state that."

3

I would hold that the report omitted a required expert opinion on the issue of causation, *see* §13.01(r)(6); *Chisholm,* 63 S.W.3d at 907, and that Cord's mistaken belief that the report complied with the statute is not a mistake of law that entitled him to a section 13.01(g) grace period. *See Walker*, 111 S.W.3d at 64-65; *In re Brown*, No. 07-04-0455-CV, 2005 Tex.App. LEXIS 684, at *6-*7 (Tex.App.–Amarillo January 7, 2005, no pet. h.). Accordingly, I would grant relators their requested relief, and respectfully dissent from the Court's disposition of their petition.

James T. Campbell
Justice