NO. 07-05-0033-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 7, 2005

_____

In re COVENANT MEDICAL CENTER and JOHN EATON, L.V.N,

Relators

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-522-597; HON. MACKEY K. HANCOCK, PRESIDING

_____

***Original Proceeding***

_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Covenant Medical Center and John Eaton, L.V.N. (collectively referred to as Covenant), petitioned this court for a writ of mandamus directing the trial court to 1) vacate its order granting Andrew Cord a 30-day grace period to file a medical expert report under §13.01(g) of article 4590i of the Texas Revised Civil Statutes and 2) dismiss Cord's suit. Cord was not entitled to an extension because the medical report tendered fell outside the scope of §13.01(g), says Covenant, and, therefore, the trial court was obligated to dismiss the suit.[1] We deny the application.

_____

[1]The report in question was issued by a registered nurse.

The first question we must address is whether the avenue of mandamus can be used to address the issue before us. As recently as this year, a panel of this court held that it could. *See In re Brown*, No. 07-04-0455-CV, 2005 WL 176504 at 1 (Tex. App.– Amarillo January 27, 2005, orig. proceeding); *accord, In re Rodriguez,* 99 S.W.3d 825, 827-28 (Tex. App.–Amarillo 2003, orig. proceeding) (holding the same); *In re Morris,* 93 S.W.3d 388, 390 (Tex. App.–Amarillo 2002, orig. proceeding) (holding the same). So the answer is yes.

Next, we must determine whether the trial court abused its discretion by granting Cord 30 additional days to file an adequate expert report. *See In re Entergy Corp.,* 142 S.W.3d 316, 320 (Tex. 2004) (holding that before mandamus can issue, the applicant must show that the trial court clearly abused its discretion); *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003) (holding that the appropriate standard of review when assessing whether the trial court erred in granting an extension is one of abused discretion). According to Covenant, such an abuse occurred because the failure to timely provide an adequate report resulted not from an accident or mistake, as contemplated by art. 4590i, §13.01(g), but rather intentional or consciously indifferent conduct.[2] Moreover, the conduct consisted of

---

[2]Article 4590i, §13.01(g) provided that:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection . . . .

> TEX. REV. CIV. STAT. ANN. art. 4590i, §13.01(g) (Vernon Supp. 2003).

We recognize that this article can now be found at TEX. CIV. PRAC. & REM. CODE ANN. §§74.001-74.507 (Vernon 2005).

a purported mistake of law concerning the qualifications or ability of a registered nurse to opine about what caused the injury at issue.

The expert in question (Paula L. Antognoli, Ph.D., R.N., C.N.A.A.) was, and is, a registered nurse with a doctorate in philosophy. In her report, she generally described the length of time she practiced nursing, her duties, and the areas of her "clinical expertise." The latter included "medical/surgical, critical care, emergency and trauma care, and surgical services . . . ." So too did she state that the "enclosed vita attests to my qualifications as a result of my education and experience to render an opinion about the *standard of care* applicable to this case." (Emphasis added). Nowhere in the report or vitae, however, did she expressly represent that her qualifications also enabled her to address causation.

> One suing another for medical malpractice must
>
> [n]ot later than the later of the 180[th] day after the date on which a health care liability claim is filed or the last day of any extended period . . . (1) furnish to counsel for each physician . . . one or more expert reports, with a curriculum vitae of each expert listed in the report; or (2) voluntarily nonsuit the action against the physician . . . .

TEX. REV. CIV. STAT. ANN. art. 4590i, §13.01(d) (Vernon Supp. 2003). For a report to satisfy art. 4590i, §13.01(d), it must be written by an expert and provide a fair summary of that expert's opinions regarding the applicable standard of care, its breach, and the causal relationship between the breach and injury. *Chisholm v. Maron,* 63 S.W.3d 903, 906 (Tex. App.–Amarillo 2001, no pet.). So too must it and the attached vitae establish the expert's qualifications as an expert. *Id.* That is, it must show that the declarant is qualified as an expert on the subject about which he speaks. *Id.* at 906-07; *accord In re Windisch*, 138 S.W.3d 507, 511 (Tex. App.–Amarillo 2004, orig. proceeding).

3

Next, while expert testimony is normally required to establish the elements of a medical malpractice claim, *see Hood v. Phillips,* 554 S.W.2d 160, 165-66 (Tex. 1977), that rule has its exceptions. For instance, under some circumstances it may not be necessary to prove causation. *Schneider v. Haws,* 118 S.W.3d 886, 892-93 (Tex. App.–Amarillo 2003, no pet.); *Traut v. Beaty*, 75 S.W.3d 661, 668 (Tex. App.–Texarkana 2002, no pet.). Those circumstances include situations wherein the relationship between the act and result is a topic that can be accessed simply through the exercise of a factfinder's general experience and common sense. *Id.*

At bar, Cord sued Covenant and a licensed vocational nurse (LVN). His complaints were founded upon alleged breaches of standards applicable to the nursing profession. Being that the standards of care at issue pertained to nursing, as opposed to the practice of medicine by a physician, Cord had a registered nurse (Antognoli) review the supposed misfeasance and draft a report per §13.01(d), art. 4590i. In her report, Antognoli not only described the acts she deemed misfeasance but also opined about the applicable standards of care which a nurse was to follow, their breach, and the causal relationship between their breach and injury suffered by Cord. Furthermore, in explaining her qualifications as an expert, she said nothing about her ability to discuss the topic of causation. Instead, she simply represented that her education and experience enabled her "to render an opinion about the standard of care . . . ." Thereafter, the trial court found the report deficient; it apparently believed that she either was not qualified as an expert to opine about causation or did not illustrate that she was so qualified. Nonetheless, it eventually gave Cord 30 more days to file a report satisfying the requirements of §13.01(d).

4

Implicit in the decision to extend Cord more time is the finding that neither he nor his attorney acted intentionally or with conscious indifference when tendering the initial report.[3] Indeed, one of Cord's attorney's testified that they did not so act but thought a nurse such as Antognoli was qualified to opine about the results of one's failure to abide by standards of care recognized in the field of nursing. And, while admitting that Antognoli may not have been qualified to discuss the "extent of the brain damage" suffered by Cord, he nonetheless thought her capable of analyzing the effect one's inability to breathe would have on one's well-being. Indeed, he informed the trial court that with regard to the failure to "monitor a patient, if a patient stops breathing, you probably don't even need to be a nurse to say that's going to cause harm."

Given the statement of Cord's attorney, there is evidence of record upon which the trial court could have found (when deciding whether to grant additional time) that counsel likened the element of causation to be of the kind mentioned in *Schneider* and *Traut*; that is, of the type that requires no expert testimony. In other words, the trial court had before it evidence of a purported mistake made by Cord's attorney which influenced his decision to have Antognoli draft the report. The alleged mistake consisted of the belief that a registered nurse could opine not only about the duties imposed *on nurses* but also the injuries caused others by the misconduct *of nurses.* More importantly, that nurses could so testify in certain situations found support in the law, as illustrated by *Schneider* and

---

[3]Again, statute permits the trial court to grant the extension if it concludes that the claimant's actions were neither intentional nor the result of conscious indifference but rather accidental or a mistake. TEX. REV. CIV. STAT. ANN. art.4590i, §13.01(g) (Vernon Supp. 2003).

*Traut*.[4] Since evidence of such a belief appears of record and the belief has arguable basis in the law, the trial court had basis to conclude that the mistake of counsel was accidental as opposed to intentional or consciously indifferent. And, because of that we cannot say it acted unreasonably or abused its discretion in granting Cord a 30-day extension. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex. 1978) (holding that when findings of fact and conclusions of law are not filed, the judgment must be upheld on any legal theory supported in the record).

To the extent Covenant suggests that *Walker v. Gutierrez* mandates a different result, we would disagree. *Walker* involved a situation wherein the report omitted one or more elements required by §13.01(r)(6) of the Revised Civil Statutes. And, because statute clearly dictated that the report cover each element, the Supreme Court hesitated to excuse non-compliance with settled law. *Walker v. Gutierrez*, 111 S.W.3d at 64; *see also In re Zimmerman,* 148 S.W.3d 214, 217 (Tex. App.–Texarkana 2004, orig. proceeding). Yet, unlike the circumstance in *Walker*, authority here exists that enables a complainant to utilize a non-expert's opinion on causation in certain cases. So too does the record hold evidence indicating that Cord and his attorneys thought that authority applied. So, we cannot say that the mistake, if any, by Cord implicated settled law known to Cord and contrary to his position.

Accordingly, the petition for writ of mandamus is denied.

Brian Quinn
Campbell, J., dissenting.                                  Chief Justice

---

[4]Whether the acts and injury involved in the case at bar evince one of those situations is not a matter before us at this time.