SOUTHWEST TEXAS METHODIST
HOSPITAL, Appellant,

v.

Mary Louise MILLS, Appellee.

No. 901.

Court of Civil Appeals of Texas,
Tyler.

March 11, 1976.
Rehearing Denied April 8, 1976.

**28**

George H. Spencer, Clemens, Weiss, Spencer & Welmaker, San Antonio, for appellant.

Donald J. Richard, Southers, Goldberg, Lyons & Huson, Inc., San Antonio, for appellee.

MOORE, Justice.

Plaintiff, Mary Louise Mills, instituted this suit against defendant, Southwest Texas Methodist Hospital, for damages for personal injuries alleged to have been sustained while she was a patient at defendant hospital. She alleged that she sustained an injury to her sciatic nerve caused by the negligence of a nurse employed by defendant in making a hypodermic injection. A jury trial resulted in a verdict and judgment in favor of plaintiff for the sum of $13,000, from which defendant has perfected this appeal.

The trial court submitted the cause to the jury upon three special issues. The issues, together with the jury's verdict, were as follows: (1) Special Issue No. 1: Did Mary Louise Mills sustain an injury to her sciatic nerve as a result of an intramuscular injection while in the Defendant's hospital on August 31, 1972? Answer: Yes; (2) Special Issue No. 2: Was such injury to the sciatic nerve, inquired about in Issue No. 1, due to the negligence of Defendant, its agents, servants or employees? Answer: Yes; and (3) Special Issue No. 3: Was such negligence, if you have so found, a proximate cause of the injury, if any, to Mary Louise Mills? Answer: Yes. In connection with the special issues, the trial court instructed the jury as follows: "You are instructed that you may infer negligence by a party, but are not compelled to do so, if you find: (a) the character of the injury is such that it would ordinarily not happen in the absence of negligence; and (b) it is more reasonably probable that the injury was due to the negligence of such party than to any other possible cause; and (c) the instrumentality causing the injury was under the management of such party or its agents, servants or employees, at the time the negligence, if any, causing the injury probably occurred."

By its first and fourth points of error, the hospital seeks a reversal on the grounds that (1) there was no evidence to support the jury's finding of negligence on the part of appellant's employees, (2) that appellee cannot, as a matter of law, recover on the theory that the doctrine of res ipsa loquitur is applicable, because the doctrine is not applicable to the facts, and (3) even if the doctrine of res ipsa is applicable, there is no evidence that the appellee sustained an injury to her sciatic nerve as a result of the hypodermic injection. In reply appellee argues that the jury's finding of negligence may be sustained on both direct and circumstantial evidence, but if not, then the verdict can be sustained on the basis of the jury's finding on Special Issue No. 1, together with the trial court's instruction allowing the jury to find for the appellee upon the doctrine of res ipsa loquitur. In support of her contention, appellee relies upon *Mobile Chemical Co. v. Bell*, 517 S.W.2d 245 (Tex.1974). We are not in accord with appellee's contention. Upon the record before us, we have concluded that appellant's points must be sustained. Accordingly, we reverse and render judgment in favor of the hospital.

The evidence shows that on the advice of her doctor, plaintiff was admitted to defendant hospital for a hysterectomy. At 6:00 a. m. on the morning of the operation, plaintiff was given a sedative orally. Then at 6:30 a. m., while sedated but still con-

scious, plaintiff was given a pre-operative intramuscular hypodermic injection of demerol, phenergan and atropine in her left buttock by a nurse. Plaintiff testified that after the injection she felt a warm stinging sensation in her left leg. At 7:30 a. m. plaintiff was taken to the operating room and placed on the operating table in the lithotomy position, on her back with her feet elevated and knees flexed. Her legs were suspended by the use of stirrups. According to the testimony of Dr. Marasovich the hysterectomy was performed without incident. Following the operation, plaintiff was given injections in the left buttock at 10:45 a. m., 12:00 noon and 4:00 p. m. Prior to the operation, plaintiff had no difficulty in the use of her left leg. Shortly after 4:00 p. m., however, plaintiff complained to the nurses and Dr. Marasovich of numbness in her left leg. Dr. Marasovich testified that he did not know why plaintiff suffered pain in her leg and had not reached any conclusion as to what may have caused her pain. He testified that he asked Dr. Branch, a neurosurgeon, to examine plaintiff's left leg to determine the cause of her complaint. Dr. Branch testified that he examined the plaintiff on several occasions and found no point of tenderness, no area of bruising or sign of the injection or injury along the sciatic nerve. He testified that he found nothing to indicate that the hypodermic shot had been given at an improper place or in an improper way. He testified that in his opinion plaintiff did not receive an injury due to the intramuscular injections and that he did not know the cause of her sciatic nerve injury. Dr. Washburn testified that as a result of an electromyogram he found the plaintiff to be suffering from a partial severe left sciatic nerve injury. He testified that the cause of her condition was unknown.

According to the testimony of the various doctors testifying in the case, there were eight possible causes of plaintiff's sciatic nerve injury, to-wit: (1) stretching of a portion of a sciatic nerve; (2) irritation of the nerve by a previously existing disc; (3) functional problems; (4) complication of the above; (5) direct pressure to the nerve during the operation; (6) long sustained pressure on the sciatic nerve during the operation; (7) sudden loss of blood supply during the operation; and (8) infection or immune process as a result of the operation.

None of the doctors who testified could say that the intramuscular injections were improperly administered, nor is there any direct evidence that the hypodermic needle used by the nurse or nurses ever struck or came in contact with plaintiff's sciatic nerve. None of the doctors were able to determine the cause of the injury to the sciatic nerve. The only testimony relating to probable cause of the injury was given by Dr. Washburn in response to a hypothetical question.

Appellee takes the position that the jury's finding on Special Issue No. 2 (based on the finding on Special Issue No. 1) amounts to a finding that the appellant's employees were guilty of negligence in administering the hypodermic injection and that the jury's finding of negligence is supported by the evidence.

■ It has been recognized that persons undertaking to administer anesthetics in the course of medical or dental treatment, like medical or dental practitioners generally, are not insurers against harm nor guarantors of a favorable result, but are required only to exercise ordinary or reasonable care and skill under the circumstances. 61 Am.Jur.2d sec. 110, Physicians, Surgeons, and etc.; Annot., 53 A.L.R.2d 144 (1957). When a case concerns the highly specialized art of administering injections of anesthetics, with respect to which a layman can have no knowledge at all, the court and jury must depend on expert evidence. As pointed out in *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949), "There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. * * *

". . . Here the Courts have been obliged to insist on the dictate of simple logic, . . . that expert testimony on the main fact and issue must somewhere

appear in the plaintiff's whole evidence; and for lack of it the Court may rule, in its general power to pass upon the sufficiency of evidence, that there is not sufficient evidence to go to the jury . . . ."

Without the aid of expert testimony in this case, a jury could not, without resorting to conjecture and surmise, determine that the defendant's employees failed to exercise their skill and use the care exercised by the ordinarily skillful, careful and prudent nurse acting under the same or similar circumstances. *Wilson v. Scott,* 412 S.W.2d 299 (Tex.1967); *Louis v. Parchman,* 493 S.W.2d 310 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.).

■ There is no testimony whatever in this regard, expert or otherwise, suggesting that defendant's employees failed to exercise their skill and use the care exercised by an ordinarily skillful, careful and prudent nurse in making the hypodermic injection. Accordingly, the judgment cannot be sustained on the basis of the finding of negligence.

This brings us to the question of whether the evidence was sufficient to justify the submission of the case to the jury on the doctrine of res ipsa loquitur. We have concluded that it was not.

■ The doctrine of res ipsa loquitur springs from the very practical process of drawing logical conclusions from circumstantial evidence. Its purpose is to permit one who suffers injury from something under the control of another, which ordinarily would not cause the injury except for the other's negligence, to present his grievances to the court or jury on the basis of the reasonable inferences to be drawn from such facts, even though he may be unable to present direct evidence of the other's negligence.

■ A review of the cases, both pro and con, on the application of the doctrine in malpractice actions demonstrates that the doctrine is applicable only where it is a matter of common knowledge among laymen or medical men, or both, that the injury would not have occurred without negligence. *Rayner v. John Buist Chester Hospital,* 526 S.W.2d 637 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.); *Hunter v. Robison,* 488 S.W.2d 555 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.); *Seneris v. Haas,* 45 Cal.2d 811, 291 P.2d 915, 53 A.L.R.2d 124 (1955). Very few laymen have had experience in administering anesthetics by use of a hypodermic needle. Consequently, insofar as laymen are concerned, it cannot be said in this instance that it is a matter of common knowledge that the injury would not have occurred without negligence. Such conclusion can rest only upon expert testimony. *Bowles v. Bourdon,* supra; *Brown v. Shannon West Texas Memorial Hospital,* 222 S.W.2d 248 (Tex.Civ.App.—Austin 1949, writ ref'd n. r. e.).

■■ This brings us to the question of whether there was any expert testimony calling for the application of the doctrine of res ipsa loquitur. All the witnesses seem to agree that an injury to the sciatic nerve, in an operation of this type, is rare and does not ordinarily occur. This fact, however, does not prove that the injury more likely occurred because of negligence. The mere fact that an unfavorable result is somewhat rare does not give rise to the inference of negligence. *Louis v. Parchman,* supra; *Dees v. Pace,* 118 Cal.App.2d 284, 257 P.2d 756 (1953), citing other cases. There is no testimony that the injury to the sciatic nerve would not have occurred without negligence on the part of the defendant's employees. Consequently, there is nothing in the expert testimony that would raise an inference of negligence giving rise to the application of the doctrine of res ipsa loquitur.

Even if the expert testimony could be construed as giving rise to the inference of negligence, there appears to be no probative evidence establishing that such negligence was the proximate cause of the injury. Both Dr. Marasovich and Dr. Branch testified that they did not know the cause of the injury to appellee's sciatic nerve. Dr. Washburn testified that although he was of the opinion that the sciatic nerve had been injured, he did not know the cause of the

injury. Thereafter, counsel for appellee propounded a hypothetical question asking Dr. Washburn to assume certain facts in evidence. Before concluding the hypothetical question, counsel asked the doctor to assume further that "there were no other traumas or infections to the sciatic nerve" and then asked the doctor if he had an opinion of whether the injections probably caused the injury to the sciatic nerve. Appellant objected on the ground that there was no evidence eliminating all "other traumas or infections." After the objection was overruled, Dr. Washburn answered, "Yes, I don't know how else I can answer that question." Dr. Washburn then testified, "If this was the actual case, that an injection was given into this area and this was the only unusual event that occurred, then this would have been the probable reason for the finding of sciatic nerve injury." Dr. Washburn then testified that there were many possible causes of a lesion to the sciatic nerve.

Res ipsa loquitur does not infer causation. It has nothing to do with causation. Rather it presupposes a known cause or at least a cause established by evidence in reasonable probability. *Louis v. Parchman*, 493 S.W.2d 310, 320 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.).

"The trier of fact is usually allowed to decide the issue of causation in cases of this nature: (1) when general experience and common sense will enable a layman fairly to determine the causal relationship between the event and the condition; (2) when scientific principles, usually proved by expert testimony, establish a traceable chain of causation from the condition back to the event; and (3) when probable causal relationship is shown by expert testimony. * * *" *Lenger v. Physician's General Hospital, Inc.*, 455 S.W.2d 703, 706 (Tex. 1970).

The only testimony relating to the issue of causation is the testimony of Dr. Washburn in response to the hypothetical question. The hypothetical question, as framed, was not supported by the evidence in that it was based on the assumption that the appellee's sciatic nerve injury was not caused by trauma or infections. There is no evidence to support such assumption and the trial court erred in overruling appellant's objection. The evidence shows at least eight possible causes of the injury. The possibility that the injury may have occurred from other causes was not negated. Thus, the doctor's answer to the question is of no probative force since it was based on unproved facts. The nature of this case is such that a layman could not determine the causal relationship between the event and the appellee's condition. Therefore, the judgment cannot be sustained by the application of the doctrine of res ipsa loquitur in view of the absence of expert testimony supplying the essential element of probable cause.

We do not reach appellant's points 2, 5 and 11 seeking a reversal on the ground that the evidence is factually insufficient to support the jury's finding on each of the special issues. If such points were reached, however, we would sustain the points.

The judgment is reversed and judgment is hereby rendered that appellee, Mary Louise Mills, take nothing.