**SISTERS OF ST. JOSEPH OF TEXAS, INC. d/b/a St. Mary of the Plains Hospital and Rehabilitation, Appellant,**

v.

**Genell P. CHEEK, Individually and as Administrator of the Estate of Wilker Cheek; Derinda K. Cheek; Shelly C. Lane; and Dolly K. Cheek and all Statutory Beneficiaries of Wilker Cheek, Appellees.**

No. 07–00–0273–CV.

Court of Appeals of Texas, Amarillo.

March 29, 2001.

Rehearing Overruled April 26, 2001.

G. Douglas Welch, John A. Flygare, Jeffrey B. Jones, Lindsay B. Nickle, Jones, Flygare, Brown & Wearton, Lubbock, for appellant.

Floyd D. Holder, Jr., Law Firm of Floyd Holder, George L. Thompson, III, George L. Thompson Law Offices, P.C., Lubbock, Ken Slavin, Brower and Slavin, P.C., El Paso, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

JOHNSON, Justice.

Appellant Sisters of St. Joseph of Texas, Inc., d/b/a St. Mary of the Plains Hospital and Rehabilitation, appeals from a judgment in favor of appellees Genell P. Cheek, Individually and as Administrator of the Estate of Wilker Cheek; Derinda K. Cheek; Shelly C. Lane; and Molly K. Cheek and All Statutory Beneficiaries of Wilker Cheek. By sixteen issues appellant challenges (1) rulings of the trial court admitting evidence and testimony, (2) the

legal and factual sufficiency of the evidence to support jury findings, and (3) the trial court's failure to render judgment notwithstanding the jury's verdict. Because we determine that the evidence is legally insufficient to support the jury's finding that negligence of the hospital proximately caused the death of Mr. Cheek, we reverse and render.

## BACKGROUND

On January 17, 1996, Wilker Cheek went to appellant's emergency room complaining of abdominal pain. He was admitted for evaluation. Eventually an exploratory laparotomy was performed by Dr. Job Buschman. The laparotomy revealed that Mr. Cheek was suffering from acute appendicitis. On January 19th, Dr. Buschman performed an appendectomy on Mr. Cheek. During the post-operative period, Mr. Cheek's condition seemed to improve, then deteriorate. He was transferred to the intensive care unit on January 23, 1996, and was diagnosed as having a pulmonary embolism. His condition continued to worsen and he died on January 25th.

Appellees filed suit against appellant and Dr. Buschman seeking actual and exemplary damages because of Mr. Cheek's death. The case went to trial in February, 2000. Doctor Buschman settled during trial. The jury found that the negligence of both Dr. Buschman and appellant proximately caused the death of Mr. Cheek, and that the harm to Mr. Cheek resulted from malice on the part of appellant. The trial was bifurcated as to the issue of exemplary damages. Pursuant to the jury finding of malice, the issue of exemplary damages was then submitted and the jury assessed exemplary damages against appellant.

Appellant asserts reversible error via sixteen issues. We find its second issue to be determinative of the appeal and will not address the remainder of the issues. TEX. R.APP. P. 47.1.

By its second issue, appellant challenges the legal sufficiency of appellees' proof that alleged negligence of appellant proximately caused the death of Mr. Cheek. Appellant asserts that the record contains no evidence that, to a reasonable medical probability, (1) "but for" any of the alleged breaches of standard of care on the part of its nurses, Mr. Cheek would have lived, or (2) any of the alleged breaches of standard of care by its nurses was a substantial factor in causing Mr. Cheek's death.

Appellees do not contest appellant's assertion that their burden was to prove, to a reasonable medical probability, that the negligence of appellant was a proximate cause of Mr. Cheek's death. Appellees maintain, however, that they met their burden of proof. They respond to appellant's second issue in two ways. First, they assert that their medical expert, Dr. Sparks Veasey, testified that the departures from the standard of care by the nurses caused Mr. Cheek's death. To support this response, they reference the record where Dr. Veasey testified that failures of nurses to (1) ambulate Mr. Cheek post-surgery, (2) timely recognize signs of pulmonary embolus, and (3) timely recognize Mr. Cheek's emergency status and notify the doctor "caused or contributed to" Mr. Cheek's death. Second, they note that there can be more than one proximate cause of an injury, and reference the jury's finding that the negligence of both Dr. Buschman and appellant proximately caused Mr. Cheek's death. Appellees then cite *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 401 n. 3 (Tex.1993), for the proposition that "but for" causation is inapplicable to cases where the harm is produced by concurrent causes. We disagree with appellees' position.

## LAW

■ An appellate court reviewing legal sufficiency or "no evidence" complaints may consider only the evidence and inferences that tend to support the finding and must disregard all contrary evidence and inferences. *See Continental Coffee Products v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). When an appellant attacks the legal sufficiency of evidence supporting an adverse finding on an issue on which the appellant did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

■ In medical negligence cases plaintiffs are required to prove by a preponderance of the evidence that the allegedly negligent act or omission was a proximate cause of the harm alleged. *See Kramer*, 858 S.W.2d at 400. In order to be a proximate cause of the harm, the alleged negligence must have been a substantial factor in bringing about the harm, and without which negligence the harm would not have occurred. *Id.; Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex.1995).

## ANALYSIS

■ We first address appellees' position that footnote three of the *Kramer* opinion establishes inapplicability of the "but for" aspect of proximate cause in cases where the harm is produced by concurrent causes. In *Kramer*, the Texas Supreme Court addressed the issue of whether Texas permits recovery for lost chance of survival or cure in medical malpractice cases. The conclusion was that it does not. *Kramer*, 858 S.W.2d at 404–07. In reaching that conclusion the Court first set out the existing Texas law in medical malpractice cases. That law, as to proximate cause, was stated as:

As is true in other types of negligence cases, the ultimate standard of proof on the causation issue is whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred.

858 S.W.2d at 400.

In discussing different variations of the loss of chance doctrine, the Court first addressed what it termed the "relaxed causation" approach taken by some jurisdictions. In discussing the relaxed causation approach, the Court quoted in footnote three, language from *Scafidi v. Seiler*, 119 N.J. 93, 109, 574 A.2d 398, 406 (1990). The language quoted in footnote three was to exemplify the relaxed causation test which the Kramers urged as one avenue for adoption of a loss of chance doctrine in Texas. The Texas Supreme Court specifically declined to adopt the causation standard set out by *Scafidi*, as well as any other proposed standard by which the traditional causation standard in Texas would be lessened. *Kramer*, 858 S.W.2d at 404–07. Appellees' assertion of what footnote three in *Kramer* means does not correctly state either the Texas Supreme Court's position in *Kramer* or the law as to proximate cause in medical negligence cases in Texas.

■ We next address whether the testimony of appellees' expert, Dr. Sparks Veasey, was evidence that acts or omissions of appellant proximately caused the death of Mr. Cheek. Doctor Veasey was the only physician to testify at trial on behalf of appellees. Doctor Veasey was board certified in anatomic, clinical and forensic pathology. His opinion was that Mr. Cheek's death was caused by a pulmonary embolus. He identified a pulmonary embolus as part of a thrombus, or blood

clot. When part of the thrombus breaks off, the part that breaks off is referred to as an embolus. When an embolus travels through the bloodstream and lodges in the lungs, it is classified as a pulmonary embolus. Doctor Veasey agreed with the death certificate[1] which attributed Mr. Cheek's death to "pulmonary embolus complicating appendicitis," with the underlying cause of the embolus being immobilization. Doctor Veasey testified, in substance, that a clot could be caused by, or that the size of an existing clot could be increased by, immobilization of the patient before, during, or after surgery. He disclaimed any opinion as to when the clot formed which resulted in Mr. Cheek's pulmonary embolus. Doctor Veasey estimated the patient's chances of survival at 50 percent once a massive pulmonary embolism occurs in a patient such as Mr. Cheek.

Over objection of appellant as to his qualifications under TEX.R. EVID. 702, and the principles enunciated in *E.I. du Pont de Nemours and Co. v. Robinson*, 923 S.W.2d 549 (Tex.1995), and *Broders v. Heise*, 924 S.W.2d 148 (Tex.1996),[2] Dr. Veasey was allowed to testify to the standard of care for hospital nurses giving post-surgical care to a patient in order to prevent and manage blood clots. Doctor Veasey's opinions on whether actions or omissions of appellant's nurses breached the appropriate post-surgical standard of care as to Mr. Cheek were: (1) if Mr. Cheek was not ambulated in accordance with doctor's orders, then the failure to ambulate would have breached the standard;[3] (2) delayed response of the nurses to symptoms of an embolism on the night of January 22nd breached the standard; and (3) failure of the nurses to recognize Mr. Cheek's emergency status due to a massive pulmonary embolism and to timely notify the doctor of the change of symptoms breached the standard.[4] He testified that each of these actions or omissions "caused or contributed to" Mr. Cheek's death. Doctor Veasey did not define the causal relationship he meant by his use of either the word "caused" or the phrase "contributed to." Neither choice quantified the degree to which, in the doctor's opinion, the alleged negligence was related to Mr. Cheek's death; that is, whether (1) the alleged negligence was a remote, a minor or a substantial factor in the death, or (2) the death would not have occurred in the absence of the alleged negligence. *See Kramer*, 858 S.W.2d at 400; *Estate of Milo*, 909 S.W.2d at 511. Doctor Veasey did not testify that in the absence of any of the three breaches of the standard of care

---

1. Appellant also urges as one of its issues on appeal that admission of the unredacted death certificate was error. We do not reach the issue.

2. One of appellant's issues on appeal is that Dr. Veasey was not qualified to testify to the standard of care of nurses rendering post-surgical care of patients. Although our disposition of the appeal assumes he was qualified to express valid opinions on standard of care of the nurses, we do not reach the issue, and expressly offer no opinion on the matter.

3. Doctor Veasey disclaimed any knowledge of or opinion on whether the nurses followed the doctor's orders to ambulate Mr. Cheek following surgery.

4. Appellant asserts that neither the alleged failure of the nurses to recognize symptoms of nor the alleged delayed notification of physicians of and delayed treatment for the massive pulmonary embolus could be a proximate cause of Mr. Cheek's death because according to Dr. Veasey, once a massive pulmonary embolus occurs, the patient's chance of survival is 50 percent. Accordingly, appellant argues, such omissions could have at most deprived Mr. Cheek of a 50 percent or less chance of survival. *See Estate of Milo*, 909 S.W.2d at 511. Because of our disposition of the appeal on other grounds, we need not and do not address the issue.

by the nurses, Mr. Cheek would not have died from the pulmonary embolus. In other words, he did not testify that if the nurses had ambulated Mr. Cheek in accordance with the doctor's orders, Mr. Cheek, in reasonable medical probability, would have survived. Nor did he testify that if the nurses had recognized the symptoms of pulmonary embolism earlier on January 22nd, immediately responded to those symptoms and notified the doctor, Mr. Cheek, in reasonable medical probability, would have survived.[5]

■ Logically, there must have been a difference between the causal relationship intended to be expressed by Dr. Veasey's testimony that the alleged negligence "caused" the death and the causal relationship intended to be expressed by testimony that the alleged negligence "contributed to" the death. Otherwise, the two expressions would not have been used in the alternative. The testimony, however, left the jury to speculate whether the proof was that the alleged negligence caused the death, or whether the proof was that the alleged negligence contributed to the death. Accordingly, the jury could only speculate as to the meaning of the testimony. Causation may not be established by guess, conjecture or speculation; it must be proved by competent evidence. *See Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 463 (Tex.1992).

■ Furthermore, neither choice given the jury by the testimony, that the alleged negligence "caused" the death or that the alleged negligence "contributed to" the death, sufficed as evidence that the alleged negligence was a proximate cause of the death. The jury was instructed that "proximate cause" as used in the court's charge with respect to conduct of a hospital nurse, meant "that cause, which in a

natural and continuous sequence, produces an event, and without which cause such event would not have occurred." Doctor Veasey's testimony was not evidence that, within reasonable medical probability, one or more of the allegedly negligent acts or omissions of the hospital nurses was (1) a substantial factor in Mr. Cheek's death, or (2) such that but for the act or omission Mr. Cheek would have survived. Without evidence that the injury complained of probably would not have occurred "but for" one or more of the allegedly negligent acts or omissions, recovery on a medical negligence cause of action may not be sustained. *See Estate of Milo,* 909 S.W.2d at 511.

## CONCLUSION

Evidence that negligence of appellant proximately caused the death of Mr. Cheek is legally insufficient to support the jury verdict and the judgment. Appellant's second issue is sustained. Because our ruling on appellant's second issue is dispositive of the appeal, we need not and do not address any of appellant's other issues. Tex.R.App. P. 47.1.

The judgment of the trial court is reversed. Judgment is rendered that appellees take nothing.

**5.** *See* footnote 4.