NO. 07-02-0082-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 14, 2003
_____

MARTIN L. SCHNEIDER, M.D., P.A. AND DIANA K. WISE,

Appellants

v.

ELOISE HAWS,

Appellee
_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 85,387-E; HON. ABE LOPEZ, PRESIDING
_____

*Opinion*
_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

Martin L. Schneider, M.D., P.A. (Schneider) and Diana K. Wise (Wise) appeal from a judgment rendered in favor of Eloise Haws (Haws). Alleging claims sounding in medical malpractice, Haws sued Wise and Schneider to recover damages for injuries sustained when she fell and struck her head while walking down a hall in their office. Haws, an 88 year old woman who walked with a cane, was present in the office to undergo testing to

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

determine the cause of her dizzy spells.[2] She had experienced the spells for more than a year. Wise, an employee of Schneider, administered the tests, and during them Haws exhibited signs of dizziness.[3] Approximately ten minutes after they were completed, and after Haws represented that she was no longer dizzy, Wise and Haws exited the examination room together and proceeded towards the waiting room. Though on one previous visit Schneider used a wheel chair to move her around his office due to her dizziness, Haws was not afforded such a device this time. Instead, Wise allowed her to walk from the examination room, though Wise walked next to the patient. However, before reaching the waiting room door, Wise left Haws' side. After Wise did so, Haws became dizzy, fell, and struck her head against a door or door jamb. The impact opened a "gash" in her scalp and caused a blood clot to form in her skull. Amelioration of the clot and its effects necessitated multiple surgeries.

Six issues are presented to us. Each involves the sufficiency of the evidence underlying the jury's verdict. That is, Wise and Schneider contend that the evidence was legally and factually insufficient to establish 1) the applicable standard of care, 2) a breach of that standard by Wise, and 3) a causal nexus between the breach and Haws' injuries. We affirm the judgment.

### Standard of Review

The standards of review used in assessing the legal and factual sufficiency of the

---

[2]Haws used a cane because she previously fell and injured herself. The fall that eventually occasioned the need for a cane was unrelated to dizziness, though the record contains evidence illustrating that her dizziness caused her to fall at other times.

[3]Haws sought to hold Schneider liable for the misconduct of Wise via the doctrine of respondeat superior. Thus, suit was not based upon any purportedly negligent act of his.

2

evidence are well-settled.  We cite the parties to *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001), *Texarkana Memorial Hospital v. Murdock,* 946 S.W.2d 836, 838 (Tex. 1997) and *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965) for their explanation.

Next, to recover upon a claim of medical malpractice, one must prove four elements. That is, the evidence must illustrate that 1) the physician had a duty to act according to a certain standard; 2) the physician breached that particular standard or failed to act in accordance with it; 3) the plaintiff suffered injury; and 4) the breach of the standard proximately caused the resulting injury.  *Krishnan v. Ramirez*, 42 S.W.3d 205, 212 (Tex. App.--Corpus Christi 2001, pet. denied); *Day v. Harkins & Munoz,* 961 S.W.2d 278, 280 (Tex. App.--Houston [1st Dist.] 1997, no pet.).

### *Issues One and Two — Standard of Care*

Wise and Schneider initially contend that Haws presented no evidence or factually insufficient evidence of the applicable standard of care Wise was to follow.  Their argument is focused upon the testimony of Haws' medical expert, Dr. Paschall.  Allegedly, his testimony was too general and left the jury to speculate about the procedures or mechanics which Wise should have followed *viz* her interaction with Haws.  We overrule the issues.

In addressing the issues, we note that Haws complains not of how Wise conducted the audiology test but how she acted thereafter.  According to counsel for Haws, their focus was "on the conduct after the ENG test."  With this in mind, we turn to the record before us.

Regarding the expert testimony of Dr. Paschall, he opined that Wise and Schneider

3

had to "devise a protocol, or a method, some way to ensure patient safety and comfort." What this "protocol" or "method" should have been went unsaid. Nevertheless, one should have been in place because, according to Paschall, when a patient "come[s] in the front door to see you, as soon as they come into your facility, wherever your facility is, they're your responsibility, and they're your responsibility until they leave that facility." And, when asked if the physician is "responsible for whatever happens to that patient . . .," he replied "yes." This was allegedly so "[b]ecause if they weren't coming - - coming specifically to see that practitioner, they wouldn't be there." So, in his view, the standard of care saddled Wise with the "responsibility to ensure her patient's safety" and that this duty applied "no matter what." This constitutes no evidence of the applicable standard of care for, as argued by Wise, Paschall effectively imposed upon her and her employer the yoke of strict liability or the duty of insuring and guaranteeing the safety of their patients. And, in imposing such a high standard, he required more of Wise and Schneider than that allowed by law. Simply put, physicians are not insurers against harm. *Southwest Texas Methodist Hosp. v. Mills*, 535 S.W.2d 27, 29 (Tex. Civ. App.--Tyler 1976, writ ref'd n.r.e.), *overruled on other grounds by Haddock v. Arnspiger,* 793 S.W.2d 948 (Tex. 1990). Quite the contrary, they need only exercise ordinary or reasonable care and skill under the circumstances. *Id.* So, to the extent that Paschall attempted to impose upon them a standard of care greater than that compelled by law, his testimony constituted no evidence, as a matter of law, of the applicable standard of care.

Yet, Paschall was not the only medical expert to testify. Wise presented one of her own (Dr. Dennis), and he too was asked about the standard of care.[4] He responded with the following:

> Standard of care is - - is a general concept. It's the concept of, under similar circumstances what would other reasonable practitioners have done. In my opinion, under the same set of circumstances, . . . reasonable practitioners would have done like Ms. Wise did. It is usual and prudent to escort a patient to and from the examination room. And in this particular case, I did not see any circumstances that would indicate that measures beyond that were reasonably necessary or required.

Thereafter, he underwent cross-examination. While being questioned by Haws' counsel, Dennis again acknowledged the need to escort to the waiting room those patients who underwent ENG testing. The purpose of escorting them was to "ensure . . . safety," the doctor further opined. Then, he was asked if the "degree of caution change[d] with the riskiness of the patient." The answer was "yes." Counsel for Haws also inquired if someone who was "completely useless at escorting this [88 year old] lady - - this lady if she falls" should be allowed to escort the patient by herself. To that, Dennis replied "no." By that time, Wise had already testified and admitted that 1) she "did not have hold of" Haws as the two walked down the hall and 2) even if she did, she lacked the physical strength to stop her from falling. So too had she acknowledged that "older people [were not] as stable as younger people" nor as "steady" and "spry." And, when asked if an elderly person who reports dizziness and episodes of dizziness presented a dangerous

---

[4]Wise nor Schneider addressed this testimony in their appellate brief. Yet, because the standard of review obligates us to peruse the *entire* record in search of more than a scintilla of evidence supporting the verdict, *see Texarkana Mem. Hosp. v. Murdock*, 946 S.W.2d 836, 838-39 (Tex. 1997), we cannot ignore it.

situation, she replied that "[i]t can be." To this we add the evidence illustrating that 1) Haws was 88 years old and walked with a cane due to a prior injury, 2) Haws was known to have fallen by Dr. Schneider on one or more occasions due to sudden dizziness, 3) Wise should have known that Haws fell, at times, due to her dizzy spells, 4) on at least one prior visit, Haws was so dizzy Schneider had her placed in a wheelchair to move her about the office, and 5) Wise, who obviously knew Haws had historically suffered from sudden onset of dizzy spells, left the octogenarian's side as the two proceeded down the hallway.

From the evidence we mentioned, a rational factfinder could reasonably deduce several things. First, the standard of care (as described by Dennis) required Wise to safely return Haws to the waiting room via the use of an escort. Second, the degree of caution to be exercised changed depending upon the risk surrounding the patient. Third, escorting the patient required more than simply walking by her side or in close proximity. Indeed, implicit in Dennis' acknowledgment that an escort was to be provided for purposes of safety and one who was "completely useless at escorting" an elderly lady "if she falls" should not be allowed to escort her is the reasonable inference that the escort not only be reasonably capable of preventing the patient from falling but also reasonably prevent the patient from falling. If this were not so and if all that was needed was for someone to merely walk in close proximity to Haws, then it would have been of no consequence to Dennis whether safety was an issue and whether the assigned escort was "completely useless at escorting . . . if she falls." But, again, it mattered to him. Thus, there existed more than a scintilla of evidence of an applicable standard of care to which Wise and

6

Schneider were required to conform and, the jury's decision so concluding was not manifestly unjust given the entire evidentiary record.[5]

### *Issues Three and Four — Breach of Standard*

Next, Wise and Schneider argue that "[t]here is also no evidence or insufficient evidence that Wise breached the standard of care." We disagree and overrule the issues.

As we concluded under issue one, evidence illustrated that the applicable standard of care obligated Wise (given the circumstances before her) to return Haws safely to the waiting room. Furthermore, this entailed, at the very least, the provision not only of an escort reasonably capable of preventing her fall but also one who would reasonably prevent her fall as she journeyed from the examining to the waiting room. Other evidence illustrated that the escort provided to Haws, *i.e.* Wise, 1) knew Haws historically suffered from dizziness, 2) lacked the physical ability to prevent Haws from falling, 3) solicited the help of no one else when returning Haws to the waiting room, 4) provided Haws with no mechanical device to assist her return to the waiting room, such as a wheel chair which Schneider had provided her in the past due to her dizziness, 5) failed to take hold of Haws

---

[5]We agree with the dissent to the extent it suggests that the testimony about the standard of care was less than clear and unequivocal. Yet, Dennis did testify that an escort was needed due to concerns for the patient's safety, or at least a rational juror reasonably could have so interpreted his words. So too could a rational juror reasonably interpret the doctor's comments as requiring the escort to be capable of preventing an octogenarian (who walked with a cane, had a history of dizziness about which her doctors knew, and had just completed a test for dizziness wherein she manifested dizziness) from falling while escorting the patient. At this time, the law does not restrict the litigants, at trial, to asking specific questions in a specific way to prove or disprove claims of medical malpractice. Because it does not, the task is left to the factfinder (or jury in this case) to use its common sense and experience to interpret and analyze that which it hears from a witness' mouth. And, while we may have decided the case differently had we been the jury, we were not. In short, an appellate court must defer to the jury's decision so long as some evidence supports it and its verdict is not *clearly* wrong or *manifestly* unjust given the entirety of the record.

as she walked towards the waiting room, and 6) left Haws' side before Haws reached the waiting room. This constitutes some evidence from which a rational factfinder could reasonably deduce that Wise breached the standard of care Dennis described by not only failing to reasonably prevent Haws from falling but also by failing to provide the elderly lady an escort reasonably capable of preventing her from falling. Furthermore, such a finding would not be so against the great weight and preponderance of the evidence as to render it manifestly unjust.

It is suggested that some expert had to testify that a breach occurred. Furthermore, none allegedly did because the only expert whose testimony was legally cognizable (Dennis) opined that reasonable practitioners would have done like Wise did. Yet, the record also illustrates that Dennis said more. As previously mentioned, he acknowledged that the duty to escort was tied to the need for safety and that one who was physically incapable of preventing the patient from falling should not be allowed to escort the patient alone. Moreover, Wise admitted that she lacked that physical capability, failed to secure the help of no one who had that capability, and provided Haws with no device to assist her safe return. So, we have before us the requisite expert testimony of breach in the guise of one expert's testimony (that of Dennis) setting forth the applicable standard of care and another expert's testimony ( that of Wise) illustrating that she could and did not comply with it as she and Haws walked down the hall.

Additionally, while authority holds that expert testimony is generally needed to determine whether a duty was breached in a medical malpractice case, that is not a hard and fast rule. As stated by the Texas Supreme Court, "[t]he burden of proof is on the

8

patient to establish that a breach has occurred . . . and, *unless the mode or form of treatment is a matter of common knowledge or within the experience of the layman,* the patient must tender expert testimony to meet the burden." *Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex. 1993) (emphasis added). In other words, if the purported breach involves circumstances which a juror can analyze through application of common knowledge or experience, then the patient need not tender expert testimony explaining whether a breach occurred. And, we believe that rule applies here. Whether the duty (as described by Dennis) to provide a safe escort (to an 88 year old patient walking with a cane after undergoing a test for dizziness) was breached when her escort was physically incapable of safely escorting her if she fell is a matter within the realm of common knowledge and experience. So, expert testimony was unnecessary, even though it appears of record.

### *Issues Five and Six — Causation*

In their final two issues, Wise and Schneider argue that no evidence or factually insufficient evidence supports the decision that any breach on their part proximately caused the injury suffered by Haws. This is so because "Haws did not establish cause in fact" and her "accident was not foreseeable." We disagree and overrule the issues.

As previously mentioned, one must also prove, in a medical malpractice case, that the negligent act or omission proximately caused the harm alleged. *Sisters of St. Joseph of Tex. Inc. v. Cheek*, 61 S.W.3d 32, 35 (Tex.--Amarillo 2001, pet. denied). For an act or omission to be such a cause, two elements must be established. That is, the plaintiff must establish that the act or omission was a cause-in-fact of the injury and that the injury was

9

reasonably foreseeable. *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex. 1998). Next, to be a cause-in-fact, there need only be a reasonable probability that the act or omission gave rise to the harm. *Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 399-400 (Tex. 1993). And, such a probability exists if the conduct is a substantial factor in bringing about the result, without which the result would not have occurred. *Sisters of St. Joseph of Tex. Inc. v. Cheek*, 61 S.W.3d at 35.

Here, Wise and Schneider initially suggest that the standard can only be met through the presentation of expert testimony. They are mistaken for "[n]ot every medical malpractice case requires expert testimony to demonstrate causation." *Traut v. Beaty*, 75 S.W.3d 661, 668 (Tex. App.--Texarkana 2002, no pet.). Indeed, an expert may be needed at times to calculate the probability that a certain result arose from particular conduct. Yet, a trier of fact nonetheless may assess causation when the relationship between the act and result come within the factfinder's general experience and common sense. *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970); *Parker v. Employers Mut. Liability Ins. Co.*, 440 S.W.2d 43, 46 (Tex. 1969); *Traut v. Beaty*, 75 S.W.3d at 668. And, that is the situation here. Whether the failure to provide Haws with an escort or mechanism capable of safely returning her to the waiting room resulted in her striking her head is something within the general experience and common sense of a factfinder. No scientific theorems or concepts outside the general intelligence of a juror are implicated in that assessment. So, expert testimony on the matter was not needed.

Next, that Wise had to abide by the standard of care described above, that she lacked the physical strength to stop Haws from falling, that she failed to secure the help

10

of anyone else to assist her, that she failed to provide Haws with a device (such as a wheel chair) that would prevent Haws from falling and despite the fact that such a device had previously been provided her, that Wise left Haws' side as the two walked towards the waiting room, and that Haws fell and struck her head is some evidence from which a reasonable factfinder could deduce that the failure to provide the requisite escort was a substantial factor in bringing about the harm suffered, without which the harm would not have occurred. And, such a determination would not be against the great weight and preponderance of all the evidence.

Nor can we say that there existed a dearth of evidence upon which the jury could hold that the harm was foreseeable. To be reasonably foreseeable, it is not necessary that the particular accident or injury be predicted, only that the harm be of a general character that might reasonably have been anticipated. *Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 869 (Tex. App.--Austin 1997), *aff'd*, 990 S.W.2d 732 (Tex. 1998). This does not permit simply viewing facts in retrospect and theorizing an extraordinary sequence of events by which the defendant's conduct caused the injury. *Read v. Scott Fetzer Co.*, 990 S.W.2d at 737. Rather, the question involves a practical inquiry based on experience applied to human conduct. *Id.* And, whether practical inquiry based on experience applied to human conduct authorized the factfinder to conclude that Haws' injury was foreseeable is quickly resolved by simply looking at Dennis' testimony. If, according to Dennis, an escort is needed for purposes of safety and if that escort must be capable of preventing a patient like Haws from falling, then logic compels that the risk of falling unless a capable escort

is provided is foreseeable. If this was not so, then there would be no rationale for Dennis to imply that the escort must be capable of preventing a fall.

To Dennis' testimony we also add that illustrating that Haws had previously fallen due to the sudden onset of dizziness, that Schneider knew of this and Wise should have, and that Schneider had provided Haws with a wheel chair on at least one prior visit due to her dizziness. This, coupled with the words of Dennis, constitute more than a scintilla of evidence permitting the jury to rationally conclude that the injury suffered by Haws as a result of the breach by Wise and Schneider was reasonably foreseeable. Furthermore, we cannot say, given the entirety of the record, that the factfinder's holding to that effect was or is against the great weight and preponderance of the record.

Having overruled the issues posed by Wise and Schneider, we affirm the judgment of the trial court.[6]

Brian Quinn
Justice

---

[6]We caution against interpreting the result in this case as insinuating, in any way, that physicians generally have the duty to escort or provide escorts to their patients. It was because of the particular testimony of Dr. Dennis that the appellants were saddled with that responsibility at bar. In short, we limit our ruling to the facts and circumstances of this particular case. And, if we were permitted under the rules of appellate procedure from withholding publication of this opinion we would do so given the unique testimony in this case.

NO. 07-02-0082-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 14, 2003

_____

MARTIN L. SCHNEIDER, M.D., P.A. AND DIANA K. WISE,

Appellants

v.

ELOISE HAWS,

Appellee

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 85,387-E; HON. ABE LOPEZ, PRESIDING

_____

Before QUINN and REAVIS, JJ. and BOYD, SJ.[7]

**DISSENT**

Although I agree with the majority that evidence of the appropriate standard of care

was legally sufficient to support the trial court's judgment, in my opinion the evidence was

_____

[7]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.  Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

13

factually insufficient to establish the appropriate standard of care or a breach of the standard of care as presented in issues two and four. Accordingly, I respectfully dissent.

Among other contentions, Haws argues that even if no medical expert testimony was presented, the general negligence standard of care would apply. However, because Haws elected to submit her case on a medical malpractice theory, she is limited to that same theory on appeal. Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 444 (Tex.App.--Fort Worth 1997, pet. denied); *see also* Davis v. Campbell, 572 S.W.2d 660, 662 (Tex. 1978) (holding that parties are restricted on appeal to theory on which the case was tried).

The mere occurrence of an event causing injury does not constitute evidence of negligence. Allsup's Convenience Stores v. Warren, 934 S.W.2d 433, 436 (Tex.App.--Amarillo 1996, writ denied). Where, as here, the pleadings assert a medical malpractice cause of action, as a threshold requirement, a plaintiff must prove the applicable standard of care by expert testimony. *See* Johnson v. Berg, 848 S.W.2d 345, 348 (Tex.App.--Amarillo 1993, no writ). Further, causation may not be established by guess, conjecture, or speculation and expert testimony must be legally and factually sufficient to enable the jury to avoid guessing or speculating on its answers. Sisters of St. Joseph of Texas v. Cheek, 61 S.W.3d 32, 37 (Tex.App.--Amarillo 2001, pet. denied).

Because the general negligence standard of care is not controlling and the "mode or form of treatment" applicable here is not a matter of common knowledge within the experience of laymen, expert medical testimony is required to provide evidence by which

14

the trier of fact may determine whether the standard of care was breached. Hood v. Phillips, 554 S.W.2d 160, 165 (Tex. 1977); see also Denton Regional Medical Center v. LaCroix, 947 S.W.2d 941, 951 (Tex.App.--Fort Worth 1997, writ dism. by agt); see generally American Transitional Care v. Palacios, 46 S.W.3d 873, 876 (Tex. 2001) (holding that expert testimony is required to establish "want of skill and attention"). Further, cause in fact must be established by a "causal connection between the negligent act and the injury based on reasonable medical probability." Hodgkins v. Bryan, 99 S.W.3d 669, 673 (Tex.App.–Houston [14th Dist.] 2003, no pet. h.).

In its analysis, after reviewing the expert testimony presented by Dr. Paschall, Haws's expert, the majority concludes his testimony constituted no evidence of the applicable standard of care. However, upon reviewing the testimony of Dr. Dennis, expert for Schneider and Wise, the majority concludes his testimony is legally and factually sufficient to support the judgment. Although I agree with the analysis of the majority as to the testimony of Dr. Paschall and that the evidence from other sources was legally sufficient, I disagree the evidence is factually sufficient.

**Factual Sufficiency of the Evidence**
**Issues Two and Four**

15

Per the charge of the court,[8] the jury was required to determine whether the evidence established "the failure to use ordinary care, that is, failing to do that which a clinical audiologist of ordinary prudence would have done under the same or similar circumstances or doing that which a clinical audiologist of ordinary prudence would not have done under the same or similar circumstances." In conducting a factual sufficiency analysis, we apply the standards set out in Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) and Raw Hide Oil & Gas v. Maxus Exploration, 766 S.W.2d 264, 276 (Tex.App.--Amarillo 1988, writ denied).

Wise testified that after the test was concluded, she assessed Haws's physical appearance and concluded she did not show any signs of dizziness and was able to "get off of the table, hold herself steady, walk out the door and down the hall." She also testified Haws did not use a wheelchair when she entered the office and in response to a question stated, "she did not need to exit in a wheelchair." On cross-examination by Haws's attorney, Dr. Dennis testified in part as follows:

> Standard of care is–a general concept. It's the concept of, under similar circumstances what would other reasonable practitioners have done. In my opinion, under the same set of circumstances, because of the reasons that I have outlined, reasonable practitioners would have done like Ms. Wise did. It is usual and prudent to escort a patient to and from the examination room. And in this particular case, I did not see any circumstances that would indicate that measures beyond that were necessary or required.

---

[8]Neither party presented any objections to the charge and none are presented on appeal.

16

The term "escort" has multiple definitions, including to guide, protect, or pay honor. Webster's II New Riverside University Dictionary 443 (1984). At trial however, Dr. Dennis did not explain his definition of the term "escort" for these purposes. Even though his comment that "reasonable practitioners would have done like Ms. Wise did" could be considered as his definition of the standard of care by example, his testimony lacked specificity and the jury could only guess or speculate as to whether the term "escort" was used to mean escort as a guide or escort for protection or safety. As a result, the information provided to the jury was insufficient to enable it to answer the questions without guessing or speculating.

Accordingly, in my opinion, the expert medical evidence is factually insufficient. I would sustain issues two and four and reverse and remand the cause for a new trial.

Don H. Reavis<br>Justice