NO. 07-04-0572-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 5, 2006


______________________________



GEARY BRIAN BROGDEN, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 49,464-A; HON. HAL MINER, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Geary Brian Brogden, appellant, appeals his conviction for assaulting a family
member and causing bodily injury. His sole issue involves the voluntariness of his guilty
plea. Purportedly, it was involuntary because his trial counsel failed to interview appellant's
wife who was also the victim of the assault. She allegedly would have testified that she
favored leniency. Furthermore, the complaint was raised via a motion for new trial, which
motion the trial court denied. We affirm the judgment. 

 According to the record, appellant was charged with assault on a family member
and causing bodily injury. The parties reached an agreement wherein appellant agreed
to plead guilty in exchange for the State recommending a prison term of five years. After
the trial court held a hearing wherein appellant pled guilty and it found the plea to be
knowing and voluntary, sentence was levied in accordance with the agreement. 
Subsequently, appellant filed a motion for new trial, alleging that trial counsel was
ineffective because he failed to interview the complaining witness, i.e. appellant's wife. 
The trial court convened a hearing on that motion and subsequently denied it. Yet,
permission was granted appellant to appeal those issues raised in the motion. And, as
previously mentioned, the sole issue before us involves the voluntariness of the plea due
to counsel's supposed ineffective assistance and the trial court's refusal to grant a new
trial. We overrule the issue for several reasons.

 First, the record discloses that appellant was fully admonished in writing prior to
pleading guilty. Appellant further represented to the trial court that, among other things,
1) he understood the effect of his plea, 2) his plea was "freely, voluntarily, and knowingly
entered," and 3) his trial counsel "provided fully effective and competent representation." 
These representations of appellant belie the argument he now proffers. Moreover, a
finding that a defendant was duly admonished creates a prima facie showing that a guilty
plea was entered knowingly and voluntarily. Martinez v. State, 981 S.W.2d 195, 197 (Tex.
Crim. App. 1998).

 Second, though the victim testified at the hearing on appellant's motion for new trial
that she wanted her husband to get medical help, did not want anything "terrible" to happen
to him, and wanted appellant to avoid going to prison, she nonetheless said he needed to
be held accountable. Furthermore, the district attorney testified that appellant's wife was
informed of the plea bargain (which included the five year prison sentence), uttered no
objections to it, and was satisfied with it. So too did the victim refuse to return the impact
statement given her. Therein, she was afforded the opportunity to reveal her desires
regarding the punishment that should be levied upon her husband; yet, she opted to forego
that chance. Trial counsel also testified and denied having any record that indicated
appellant's wife attempted to call him, though she testified otherwise. So too did trial
counsel state that he asked appellant to see if the victim would contact him given that he
purportedly was in constant communication and living with her; yet, appellant never
informed counsel that she was attempting to contact him. And, to the extent that counsel
thought the assault victim's viewpoint was of import, he deemed it a better tack to allow her
to initially contact him. If he attempted to make the initial contact, he "was afraid [he] would
scare her off, if nothing else." Finally, from the information he garnered via the district
attorney, trial counsel considered the victim's views regarding punishment to be less than
certain. While she may not have wanted him to go to prison, she did not "really want him
to be on probation either," he uttered. 

 Simply put, whether the victim would have testified favorably for appellant was an
issue of fact. Though she said that she wanted her husband to avoid prison, other
evidence disclosed that she was quite "satisfied" with him receiving the prison term offered
in the plea agreement. Thus, a question of fact existed involving whether appellant
suffered any prejudice due to his counsel's decision to have the victim contact him. See
Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (requiring the complainant to
prove that the supposedly deficient performance prejudiced him). And, the trial court was
free to resolve it against appellant.

 Next, while it is true that defense counsel has a duty to investigate, McFarland v.
State, 928 S.W.2d 482, 501 (Tex. Crim. App.1996), nowhere does appellant argue, much
less show, that it falls outside the realm of effective trial strategy to have the victim of family
violence or an assault initially contact defense counsel as opposed to vice versa. We can
see the need for defense counsel to tread cautiously when engaging in pretrial contact with
such a person. The latter may well be on an emotional or psychological precipice and,
uninvited contact from the assailant's representative in order to curry favor from the victim
may well trigger adverse, if not criminal, backlash. See Tex. Pen. Code Ann. §36.05
(Vernon 2003) (defining the crime of witness tampering). Thus, the trial court could well
have determined that counsel's tack was indeed acceptable trial strategy, and that despite
her intimations otherwise, the victim never contacted trial counsel. See Thompson v.
State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (holding that the appellant must rebut the
presumption that his counsel's actions were legitimate trial strategy).

 In sum, the trial court did not abuse its discretion in overruling the motion for new
trial. See Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004) (holding that the
denial of a motion for new trial is reviewed under the standard of abused discretion).
Accordingly, we affirm the judgment of the trial court.

 

 Brian Quinn

 Chief Justice


Do not publish.


, 858 S.W.2d 397, 400 (Tex. 1993). Proximate cause as an element of
negligence consists of two components, cause in fact and foreseeability. Archer, 118
S.W.3d at 782. The cause in fact component asks whether the negligent act or omission
was a substantial factor in bringing about the injury, without which the harm would not have
occurred. Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508, 511 (Tex. 1995). In a
medical negligence case, proximate cause must be established to a reasonable medical
probability. Id; see Sisters of St. Joseph of Texas, Inc. v. Cheek, 61 S.W.3d 32, 34
(Tex.App.-Amarillo 2001, pet. denied) (stating standard). There is no dispute that expert
medical testimony was required to demonstrate the causal connection between Covenant's
nursing staff's claimed negligence and Donna Basinger's injuries. Compare Schneider v.
Haws, 118 S.W.3d 886 (Tex.App.-Amarillo 2003, no pet.) (expert testimony not always
required to establish causation), with Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497,
499 (Tex. 1995) (expert testimony required to establish cause of frostbite injury). 

 To establish causation, the Basingers rely on the deposition testimony of Lisa
DeHoyos Hogan, a registered nurse. They do not contend that Hogan has the
qualifications necessary to render an opinion on the cause of Donna Basinger's
pneumonia, to a reasonable medical probability. Hogan testified that she was not qualified
to make a medical diagnosis, such as a diagnosis of pneumonia. She further
acknowledged she was not qualified to opine that Basinger's pneumonia was caused by
aspiration, or was caused by misplacement or malfunction of the nasogastric tube. Hogan
testified, however, that nurses "can relate to" a medical diagnosis made by a physician that
appears in the patient's chart. Summarizing her opinion concerning maintenance of the
tube by the nursing staff, Hogan testified:

 During [the colon surgery] a nasogastric tube was inserted. It was up to the
nursing staff to maintain the function of that tube. It is within the standard of
care to maintain the function of that tube. I did not find documentation to
indicate that the tube function was maintained. I did find documentation in
the [medical] record that the physicians believe she aspirated, likely due to
the malfunction of her nasogastric tube.

 

 Specifically, Hogan identified two locations in the medical record in which physicians
made entries she found relevant to that question. She referred to a progress note made
by Justin McCarthy, M.D., Donna's gastroenterologist, stating "apparently NG tube became
blocked and malpositioned and patient aspirated." Considered in its context and
considering McCarthy's limited role in Donna's postoperative care as reflected in the
summary judgment record, we do not find McCarthy's statement to constitute his medical
diagnosis or an expression of his opinion based on reasonable medical probability. See
Burroughs Wellcome, 907 S.W.2d at 500 (evaluating context of statements in medical
records and finding statements were not independent conclusions). 

 Hogan also pointed to a note made by Kenneth Terrell, M.D., a pulmonologist called
in to assist with Donna's care when she developed difficulty breathing. Terrell's note
contained the statement, "I think she probably aspirated." (2) Assuming, without deciding,
that Terrell's brief notation properly can be viewed as an opinion resting in reasonable
medical probability, Burroughs Wellcome, 907 S.W.2d at 500, the statement does not
make reference to the nasogastric tube and, on this record, it is not reasonable to infer that
he was attributing Donna's probable aspiration to any particular cause. Hogan
acknowledged that postoperative patients often aspirate fluids for reasons other than a
malfunctioning nasogastric tube.

 Having reviewed the summary judgment evidence under the required standard, King
Ranch, Inc., 118 S.W.3d at 751, we agree with Covenant that the summary judgment
record contains no expert medical opinion that Donna Basinger's pneumonia was caused
by an improperly functioning nasogastric tube. 

 Further, on appeal the Basingers do not point to expert testimony establishing a
causal connection, based on reasonable medical probability, between Donna's pneumonia
and any impairment of her memory. In their response to Covenant's summary judgment
motion in the trial court, the Basingers cited deposition testimony from Robert Packard,
M.D., a neurologist who evaluated Donna several years after her hospitalization at
Covenant. Packard testified, however, that he was not able to say, with reasonable
medical probability, that Donna suffered any injury as a result of a lack of oxygen
associated with her hospitalization at Covenant. (3) 



 Agreeing with the trial court that the Basingers failed to produce evidence that an
act or omission of Covenant was the proximate cause of the injuries alleged, we overrule
the second, third and fourth points and affirm the trial court's judgment.


 James T. Campbell

 Justice











 
1. See Malooly Bros., Inc. v. Napier
, 461 S.W.2d 119, 121 (Tex. 1970) (encouraging
a general appellate point assigning error to the grant of a motion for summary judgment).
2. In both instances, the deposition record suggests, but does not clearly indicate,
that the statements are quotes from the physician's notes. 
3. Packard indicated he thought it was "a possibility" that Donna suffered injury from
a lack of oxygen to her brain. See Parker v. Employers Mutual Liability Ins. Co. of Wis.,
440 S.W.2d 43, 46 (Tex. 1969) (discussing the distinction between "probability" and
"possibility" in the context of scientific testimony).