NO. 07-03-0093-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



NOVEMBER 20, 2003



______________________________




LINDA JEAN BRANUM, APPELLANT



V.



NORTHWEST TEXAS HEALTHCARE SYSTEM, INC. D/B/A


AMARILLO MEDICAL SERVICE; BAPTIST ST. ANTHONY'S HOSPITAL


CORPORATION, D/B/A BAPTIST ST. ANTHONY'S HEALTH SYSTEM;


AND OWEN GROSSMAN., M.D., APPELLEES




_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 88,546-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________



Before QUINN and REAVIS and CAMPBELL, JJ.


OPINION



 Appellant Linda Jean Branum challenges a summary judgment that she take nothing
by her action for medical negligence under the Medical Liability and Insurance
Improvement Act (1) against appellees Northwest Texas Healthcare System, Inc., d/b/a
Amarillo Medical Service; Baptist St. Anthony's Hospital Corporation, d/b/a Baptist St.
Anthony's Health System; and Owen Grossman, M.D., (Northwest, et al.). By her first two
issues, Branum contends the trial court failed to (1) grant her motion for adoption of level
3 discovery control plan even though the granting of the motion was mandatory under Rule
190.4 of the Texas Rules of Civil Procedure and (2) consider her motion for adoption of
level 3 discovery control plan even though required to do so by Rule 190.4. By her third
issue, she contends the trial court should not have granted summary judgment before
granting her motion for adoption of level 3 discovery control plan and ordering that
discovery and designation of experts be conducted in accordance with that plan. Based
upon the rationale expressed herein, we affirm.

 After Branum filed suit on March 9, 2001, wherein she designated that she intended
discovery would be conducted under level 2 of Rule 190 against Northwest, et al., she
timely filed an expert opinion of George M. Cole, D.O., on August 17, 2001, as required
by article 4590i, section 13.01 of the Act. Branum was required to designate her testifying
experts by November 9, 2001. Tex. R. Civ. P. 195.2(a). When she did not designate any
testifying experts, Northwest, et al. jointly filed a no-evidence motion for summary judgment
under Rule 166a(i) contending Branum could not establish the appropriate standard of
care or a breach thereof or that the conduct of Northwest et al. proximately caused her
injuries. Branum did not produce any summary judgment evidence raising a genuine issue
of material fact. Instead, she filed a Motion for Adoption of Level 3 Discovery Control Plan,
a Rule 166 Scheduling Order, Postponement of Hearing on Defendants' Motion for
Summary Judgment and, alternatively, an Order Permitting Plaintiff to Designate Testifying
Experts Under Level 2. 

 Pursuant to the trial court's request, the parties agreed to submit the pending 
motions at a hearing scheduled for April 15, 2002; however, on February 22, 2002, 
pursuant to article 21.28-C, section 17 of the Texas Insurance Code, Dr. Grossman filed
a Notice of Automatic Stay of Proceedings of PHICO Insurance Company which had been
declared insolvent by order dated February 5, 2002, and stayed the proceeding until
August 5, 2002. However, the order did not stay, bar, or impede Branum's efforts to
engage an expert to be designated as her testifying expert. Upon the expiration of the six-month stay, and following a hearing on November 5, 2002, the trial court signed its order
granting summary judgment and dismissing Branum's suit with prejudice on November 7,
2002. Then, on January 12, 2003, the trial court signed its order denying Branum's motion
for correction of judgment and motion for new trial. 

 Standard of Review


 Where a motion is presented under Rule 166a(i) asserting there is no evidence of
one or more essential elements of the non-movant's claims upon which the non-movant
would have the burden of proof at trial, the movant does not bear the burden of
establishing each element of its own claim or defense as under subparagraph (a) or (b). 
Rather, although the non-moving party is not required to marshal its proof, it must present
evidence that raises a genuine fact issue on the challenged elements. Roth v. FFP
Operating Partners, 994 S.W.2d 190, 195 (Tex.App.-Amarillo 1999, pet. denied); see Tex.
R. Civ. P. 166a, Notes and Comments.

 Because a no-evidence summary judgment is essentially a pretrial directed verdict,
we apply the same legal sufficiency standard in reviewing a no-evidence summary
judgment as we apply in reviewing a directed verdict. Jackson v. Fiesta Mart, Inc., 979
S.W.2d 68, 70 (Tex.App.--Austin 1998, no pet.). Thus, our task as an appellate court is
to ascertain whether the non-movant produced any evidence of probative force to raise a
fact issue on the material questions presented. Id. We consider all the evidence in the
light most favorable to the party against whom the no-evidence summary judgment was
rendered, disregarding all contrary evidence and inferences. Merrill Dow Pharmaceuticals
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), cert. denied, 523 U.S. 1119, 118 S.Ct. 1799,
140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the
non-movant presents more than a scintilla of probative evidence to raise a genuine issue
of material fact. Fiesta Mart, Inc., 979 S.W.2d at 70-71. More than a scintilla of evidence
exists when the evidence "rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions." Havner, 953 S.W.2d at 711. 

 Instead of presenting a broad form issue which authorizes argument of all possible
grounds upon which summary judgment should have been denied, see Malooly Brothers,
Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970), Branum presents three issues which we
will consider together. Focusing on the third issue, Branum contends the trial court erred
in granting summary judgment before granting her motion for adoption of level 3 discovery
control plan and ordering expert designation to be conducted in accordance therewith. As
material here, alleging an "adequate time for discovery," and after identifying the elements
of Branum's cause of action, Northwest et al. moved for summary judgment on the ground
there was no evidence of one or more essential elements. Branum did not except to the
motion nor claim it was not adequate to "define the issues and to put" her on notice with
adequate information to oppose the motion, or otherwise proper under Rule 166a(i). See 
Inwood Forest, Etc. v. R.J.S. Development, 630 S.W.2d 751, 753 (Tex.App.--Houston [1st
Dist.] 1982, no writ). More important however, Branum did not produce any summary
judgment evidence, expert or otherwise, to establish the appropriate standard of care, a
breach thereof, or that her injuries were proximately caused by Northwest, et al.

 Branum argues that because Rule 190.4 required the trial court to convert the
discovery to a level 3 discovery control plan, the "adequate time for discovery" provision
of Rule 166a(i) also controlled the level 3 discovery control plan. We disagree. Even if
the trial court was required to convert discovery to level 3, a question we need not decide,
in McClure v. Attebury, 20 S.W.3d 722, 729 (Tex.App.--Amarillo 1999, no pet.), we held
whether an "adequate time for discovery" has been provided is case specific. See
also McMahan v. Greenwood, 108 S.W.3d 467, 498 (Tex.App.-Houston [14th Dist.] 2003,
pet. denied). Branum does not contend she did not have adequate time for discovery;
however, as material to her contention, because the question of adequate time is case
specific, we decline to impose the bright-line rule suggested by Branum. In Restaurant
Teams Intern. v. MG Securities, 95 S.W.3d 336, 339 (Tex.App.--Dallas 2002, no pet.), the
court held:

 Neither rule 166a(i) nor the comment thereto states that the discovery period
applicable to a case by virtue of rule 190 must have ended before a no-evidence summary judgment may be granted. See Tex. R. Civ. P. 166a(i)
& cmt. Instead, the rule merely requires "adequate time" for discovery. Id. 
We will not read such a bright-line requirement into the rule when its
language reflects that a more flexible approach was intended.


Moreover, Branum did not file a sworn motion for continuance as permitted by Rule 252
and did not file an affidavit stating why she needed additional time for discovery, as
required by Rule 166a(g). Jaimes v. Fiesta Mart, Inc., 21 S.W.3d 301, 304 (Tex.App.--Houston [1st Dist.] 1999, pet. denied). We overrule issues one, two, and three.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice




1. Repealed by Act of June 2, 2002, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex.
Sess. Law Serv., current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001 - 74.507
(Vernon Pamph. 2004). 


"> From the evidence we mentioned, a rational factfinder could reasonably deduce
several things. First, the standard of care (as described by Dennis) required Wise to
safely return Haws to the waiting room via the use of an escort. Second, the degree of
caution to be exercised changed depending upon the risk surrounding the patient. Third,
escorting the patient required more than simply walking by her side or in close proximity. 
Indeed, implicit in Dennis' acknowledgment that an escort was to be provided for purposes
of safety and one who was "completely useless at escorting" an elderly lady "if she falls"
should not be allowed to escort her is the reasonable inference that the escort not only be
reasonably capable of preventing the patient from falling but also reasonably prevent the
patient from falling. If this were not so and if all that was needed was for someone to
merely walk in close proximity to Haws, then it would have been of no consequence to
Dennis whether safety was an issue and whether the assigned escort was "completely
useless at escorting . . . if she falls." But, again, it mattered to him. Thus, there existed
more than a scintilla of evidence of an applicable standard of care to which Wise and
Schneider were required to conform and, the jury's decision so concluding was not
manifestly unjust given the entire evidentiary record. (5) 




Issues Three and Four -- Breach of Standard


 Next, Wise and Schneider argue that "[t]here is also no evidence or insufficient
evidence that Wise breached the standard of care." We disagree and overrule the issues.

 As we concluded under issue one, evidence illustrated that the applicable standard
of care obligated Wise (given the circumstances before her) to return Haws safely to the
waiting room. Furthermore, this entailed, at the very least, the provision not only of an
escort reasonably capable of preventing her fall but also one who would reasonably
prevent her fall as she journeyed from the examining to the waiting room. Other evidence
illustrated that the escort provided to Haws, i.e. Wise, 1) knew Haws historically suffered
from dizziness, 2) lacked the physical ability to prevent Haws from falling, 3) solicited the
help of no one else when returning Haws to the waiting room, 4) provided Haws with no
mechanical device to assist her return to the waiting room, such as a wheel chair which
Schneider had provided her in the past due to her dizziness, 5) failed to take hold of Haws
as she walked towards the waiting room, and 6) left Haws' side before Haws reached the
waiting room. This constitutes some evidence from which a rational factfinder could
reasonably deduce that Wise breached the standard of care Dennis described by not only
failing to reasonably prevent Haws from falling but also by failing to provide the elderly
lady an escort reasonably capable of preventing her from falling. Furthermore, such a
finding would not be so against the great weight and preponderance of the evidence as
to render it manifestly unjust.

 It is suggested that some expert had to testify that a breach occurred. Furthermore,
none allegedly did because the only expert whose testimony was legally cognizable
(Dennis) opined that reasonable practitioners would have done like Wise did. Yet, the
record also illustrates that Dennis said more. As previously mentioned, he acknowledged
that the duty to escort was tied to the need for safety and that one who was physically
incapable of preventing the patient from falling should not be allowed to escort the patient
alone. Moreover, Wise admitted that she lacked that physical capability, failed to secure
the help of no one who had that capability, and provided Haws with no device to assist her
safe return. So, we have before us the requisite expert testimony of breach in the guise
of one expert's testimony (that of Dennis) setting forth the applicable standard of care and
another expert's testimony ( that of Wise) illustrating that she could and did not comply
with it as she and Haws walked down the hall. 

 Additionally, while authority holds that expert testimony is generally needed to
determine whether a duty was breached in a medical malpractice case, that is not a hard
and fast rule. As stated by the Texas Supreme Court, "[t]he burden of proof is on the
patient to establish that a breach has occurred . . . and, unless the mode or form of
treatment is a matter of common knowledge or within the experience of the layman, the
patient must tender expert testimony to meet the burden." Chambers v. Conaway, 883
S.W.2d 156, 158 (Tex. 1993) (emphasis added). In other words, if the purported breach
involves circumstances which a juror can analyze through application of common
knowledge or experience, then the patient need not tender expert testimony explaining
whether a breach occurred. And, we believe that rule applies here. Whether the duty (as
described by Dennis) to provide a safe escort (to an 88 year old patient walking with a
cane after undergoing a test for dizziness) was breached when her escort was physically
incapable of safely escorting her if she fell is a matter within the realm of common
knowledge and experience. So, expert testimony was unnecessary, even though it
appears of record.

Issues Five and Six -- Causation


 In their final two issues, Wise and Schneider argue that no evidence or factually
insufficient evidence supports the decision that any breach on their part proximately
caused the injury suffered by Haws. This is so because "Haws did not establish cause in
fact" and her "accident was not foreseeable." We disagree and overrule the issues.

 As previously mentioned, one must also prove, in a medical malpractice case, that 
the negligent act or omission proximately caused the harm alleged. Sisters of St. Joseph
of Tex. Inc. v. Cheek, 61 S.W.3d 32, 35 (Tex.--Amarillo 2001, pet. denied). For an act or
omission to be such a cause, two elements must be established. That is, the plaintiff must
establish that the act or omission was a cause-in-fact of the injury and that the injury was
reasonably foreseeable. Read v. Scott Fetzer Co., 990 S.W.2d 732, 737 (Tex. 1998). 
Next, to be a cause-in-fact, there need only be a reasonable probability that the act or
omission gave rise to the harm. Kramer v. Lewisville Memorial Hosp., 858 S.W.2d 397,
399-400 (Tex. 1993). And, such a probability exists if the conduct is a substantial factor
in bringing about the result, without which the result would not have occurred. Sisters of
St. Joseph of Tex. Inc. v. Cheek, 61 S.W.3d at 35. 

 Here, Wise and Schneider initially suggest that the standard can only be met
through the presentation of expert testimony. They are mistaken for "[n]ot every medical
malpractice case requires expert testimony to demonstrate causation." Traut v. Beaty, 75
S.W.3d 661, 668 (Tex. App.--Texarkana 2002, no pet.). Indeed, an expert may be needed
at times to calculate the probability that a certain result arose from particular conduct. Yet,
a trier of fact nonetheless may assess causation when the relationship between the act
and result come within the factfinder's general experience and common sense. Lenger v.
Physician's Gen. Hosp., Inc., 455 S.W.2d 703, 706 (Tex. 1970); Parker v. Employers Mut.
Liability Ins. Co., 440 S.W.2d 43, 46 (Tex. 1969); Traut v. Beaty, 75 S.W.3d at 668. And,
that is the situation here. Whether the failure to provide Haws with an escort or
mechanism capable of safely returning her to the waiting room resulted in her striking her
head is something within the general experience and common sense of a factfinder. No
scientific theorems or concepts outside the general intelligence of a juror are implicated
in that assessment. So, expert testimony on the matter was not needed.

 Next, that Wise had to abide by the standard of care described above, that she
lacked the physical strength to stop Haws from falling, that she failed to secure the help
of anyone else to assist her, that she failed to provide Haws with a device (such as a
wheel chair) that would prevent Haws from falling and despite the fact that such a device
had previously been provided her, that Wise left Haws' side as the two walked towards the
waiting room, and that Haws fell and struck her head is some evidence from which a
reasonable factfinder could deduce that the failure to provide the requisite escort was a
substantial factor in bringing about the harm suffered, without which the harm would not
have occurred. And, such a determination would not be against the great weight and
preponderance of all the evidence.

 Nor can we say that there existed a dearth of evidence upon which the jury could
hold that the harm was foreseeable. To be reasonably foreseeable, it is not necessary that
the particular accident or injury be predicted, only that the harm be of a general character
that might reasonably have been anticipated. Scott Fetzer Co. v. Read, 945 S.W.2d 854,
869 (Tex. App.--Austin 1997), aff'd, 990 S.W.2d 732 (Tex. 1998). This does not permit
simply viewing facts in retrospect and theorizing an extraordinary sequence of events by
which the defendant's conduct caused the injury. Read v. Scott Fetzer Co., 990 S.W.2d
at 737. Rather, the question involves a practical inquiry based on experience applied to
human conduct. Id. And, whether practical inquiry based on experience applied to human
conduct authorized the factfinder to conclude that Haws' injury was foreseeable is quickly
resolved by simply looking at Dennis' testimony. If, according to Dennis, an escort is
needed for purposes of safety and if that escort must be capable of preventing a patient
like Haws from falling, then logic compels that the risk of falling unless a capable escort
is provided is foreseeable. If this was not so, then there would be no rationale for Dennis
to imply that the escort must be capable of preventing a fall. 

 To Dennis' testimony we also add that illustrating that Haws had previously fallen
due to the sudden onset of dizziness, that Schneider knew of this and Wise should have, 
and that Schneider had provided Haws with a wheel chair on at least one prior visit due
to her dizziness. This, coupled with the words of Dennis, constitute more than a scintilla
of evidence permitting the jury to rationally conclude that the injury suffered by Haws as
a result of the breach by Wise and Schneider was reasonably foreseeable. Furthermore,
we cannot say, given the entirety of the record, that the factfinder's holding to that effect
was or is against the great weight and preponderance of the record.

 

 Having overruled the issues posed by Wise and Schneider, we affirm the judgment
of the trial court. (6)


 Brian Quinn

 Justice

NO. 07-02-0082-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 14, 2003


______________________________



MARTIN L. SCHNEIDER, M.D., P.A. AND DIANA K. WISE,




 Appellants


v.



ELOISE HAWS, 




 Appellee

_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 85,387-E; HON. ABE LOPEZ, PRESIDING


_______________________________



Before QUINN and REAVIS, JJ. and BOYD, SJ. (7)

 

DISSENT




 Although I agree with the majority that evidence of the appropriate standard of care
was legally sufficient to support the trial court's judgment, in my opinion the evidence was
factually insufficient to establish the appropriate standard of care or a breach of the 
standard of care as presented in issues two and four. Accordingly, I respectfully dissent.

 Among other contentions, Haws argues that even if no medical expert testimony
was presented, the general negligence standard of care would apply. However, because
Haws elected to submit her case on a medical malpractice theory, she is limited to that
same theory on appeal. Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 444 (Tex.App.--Fort Worth 1997, pet. denied); see also Davis v. Campbell, 572 S.W.2d 660, 662 (Tex.
1978) (holding that parties are restricted on appeal to theory on which the case was tried).

 The mere occurrence of an event causing injury does not constitute evidence of
negligence. Allsup's Convenience Stores v. Warren, 934 S.W.2d 433, 436 (Tex.App.--Amarillo 1996, writ denied). Where, as here, the pleadings assert a medical malpractice
cause of action, as a threshold requirement, a plaintiff must prove the applicable standard
of care by expert testimony. See Johnson v. Berg, 848 S.W.2d 345, 348 (Tex.App.--Amarillo 1993, no writ). Further, causation may not be established by guess, conjecture,
or speculation and expert testimony must be legally and factually sufficient to enable the
jury to avoid guessing or speculating on its answers. Sisters of St. Joseph of Texas v.
Cheek, 61 S.W.3d 32, 37 (Tex.App.--Amarillo 2001, pet. denied).

 Because the general negligence standard of care is not controlling and the "mode
or form of treatment" applicable here is not a matter of common knowledge within the
experience of laymen, expert medical testimony is required to provide evidence by which
the trier of fact may determine whether the standard of care was breached. Hood v.
Phillips, 554 S.W.2d 160, 165 (Tex. 1977); see also Denton Regional Medical Center v.
LaCroix, 947 S.W.2d 941, 951 (Tex.App.--Fort Worth 1997, writ dism. by agt); see
generally American Transitional Care v. Palacios, 46 S.W.3d 873, 876 (Tex. 2001)
(holding that expert testimony is required to establish "want of skill and attention"). 
Further, cause in fact must be established by a "causal connection between the negligent
act and the injury based on reasonable medical probability." Hodgkins v. Bryan, 99
S.W.3d 669, 673 (Tex.App.-Houston [14th Dist.] 2003, no pet. h.).

 In its analysis, after reviewing the expert testimony presented by Dr. Paschall,
Haws's expert, the majority concludes his testimony constituted no evidence of the
applicable standard of care. However, upon reviewing the testimony of Dr. Dennis, expert
for Schneider and Wise, the majority concludes his testimony is legally and factually
sufficient to support the judgment. Although I agree with the analysis of the majority as to
the testimony of Dr. Paschall and that the evidence from other sources was legally
sufficient, I disagree the evidence is factually sufficient. 

Factual Sufficiency of the Evidence


Issues Two and Four



 Per the charge of the court, (8) the jury was required to determine whether the
evidence established "the failure to use ordinary care, that is, failing to do that which a
clinical audiologist of ordinary prudence would have done under the same or similar
circumstances or doing that which a clinical audiologist of ordinary prudence would not
have done under the same or similar circumstances." In conducting a factual sufficiency
analysis, we apply the standards set out in Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986) and Raw Hide Oil & Gas v. Maxus Exploration, 766 S.W.2d 264, 276
(Tex.App.--Amarillo 1988, writ denied).

 Wise testified that after the test was concluded, she assessed Haws's physical
appearance and concluded she did not show any signs of dizziness and was able to "get
off of the table, hold herself steady, walk out the door and down the hall." She also
testified Haws did not use a wheelchair when she entered the office and in response to a
question stated, "she did not need to exit in a wheelchair." On cross-examination by
Haws's attorney, Dr. Dennis testified in part as follows:

 Standard of care is-a general concept. It's the concept of, under
similar circumstances what would other reasonable practitioners have done. 
In my opinion, under the same set of circumstances, because of the reasons
that I have outlined, reasonable practitioners would have done like Ms. Wise
did. It is usual and prudent to escort a patient to and from the examination
room. And in this particular case, I did not see any circumstances that would
indicate that measures beyond that were necessary or required. 


The term "escort" has multiple definitions, including to guide, protect, or pay honor. 
Webster's II New Riverside University Dictionary 443 (1984). At trial however, Dr. Dennis
did not explain his definition of the term "escort" for these purposes. Even though his
comment that "reasonable practitioners would have done like Ms. Wise did" could be
considered as his definition of the standard of care by example, his testimony lacked
specificity and the jury could only guess or speculate as to whether the term "escort" was
used to mean escort as a guide or escort for protection or safety. As a result, the
information provided to the jury was insufficient to enable it to answer the questions
without guessing or speculating.

 Accordingly, in my opinion, the expert medical evidence is factually insufficient. I
would sustain issues two and four and reverse and remand the cause for a new trial.

 Don H. Reavis

 Justice






 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Haws used a cane because she previously fell and injured herself. The fall that eventually
occasioned the need for a cane was unrelated to dizziness, though the record contains evidence illustrating
that her dizziness caused her to fall at other times. 
3. Haws sought to hold Schneider liable for the misconduct of Wise via the doctrine of respondeat
superior. Thus, suit was not based upon any purportedly negligent act of his. 
4. Wise nor Schneider addressed this testimony in their appellate brief. Yet, because the standard
of review obligates us to peruse the entire record in search of more than a scintilla of evidence supporting
the verdict, see Texarkana Mem. Hosp. v. Murdock, 946 S.W.2d 836, 838-39 (Tex. 1997), we cannot ignore
it. 
5. We agree with the dissent to the extent it suggests that the testimony about the standard of care
was less than clear and unequivocal. Yet, Dennis did testify that an escort was needed due to concerns for
the patient's safety, or at least a rational juror reasonably could have so interpreted his words. So too could
a rational juror reasonably interpret the doctor's comments as requiring the escort to be capable of
preventing an octogenarian (who walked with a cane, had a history of dizziness about which her doctors
knew, and had just completed a test for dizziness wherein she manifested dizziness) from falling while
escorting the patient. At this time, the law does not restrict the litigants, at trial, to asking specific questions
in a specific way to prove or disprove claims of medical malpractice. Because it does not, the task is left
to the factfinder (or jury in this case) to use its common sense and experience to interpret and analyze that
which it hears from a witness' mouth. And, while we may have decided the case differently had we been the
jury, we were not. In short, an appellate court must defer to the jury's decision so long as some evidence
supports it and its verdict is not clearly wrong or manifestly unjust given the entirety of the record. 
6. We caution against interpreting the result in this case as insinuating, in any way, that physicians
generally have the duty to escort or provide escorts to their patients. It was because of the particular
testimony of Dr. Dennis that the appellants were saddled with that responsibility at bar. In short, we limit our
ruling to the facts and circumstances of this particular case. And, if we were permitted under the rules of
appellate procedure from withholding publication of this opinion we would do so given the unique testimony
in this case. 
7. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
8. Neither party presented any objections to the charge and none are presented on
appeal.